CLARKE et al, Appellants, v. THE COUNTY OF BEADLE, et al, Respondents.

(169 N. W. 23).

(File No. 4316.    Opinion filed Sept. 3, 1918.    Rehearing granted November 4, 1918).

1.    **Appeals—Dismissal of Appeal—Motion on Affidavits, Tenability Of.**

A motion to dismiss an appeal to the Supreme Court may be presented upon affidavits; the Court not being confined to the record on appeal.

2.    **Same—Dismissal of Appeal—Injunction—Executed Bridge Construction Contract—Appeal, Whether Involving Moot Question —Alternative Relief, Effect—Previous Decisions Distinguished, Modified.**

Where, in a suit by taxpayers to enjoin county commissioners from executing an alleged illegal contract with a bridge company for building certain bridges, a temporary restraining order was denied, the bridge company being thereafter made a defendant, and a trial upon merits resulting in judgment for defendants, from which judgment an appeal was taken without supersedeas bond to Supreme Court; and, after appellants' brief filed, respondents moved for dismissal of appeal, upon a showing that the bridge company, pending proceedings below and in Supreme Court, had completed its contract and received payment from the county; held, that, it appearing that through no fault of plaintiff the situation had arisen making it impossible to grant him the relief sought, he yet might be entitled to alternative relief in the action, or to seek other relief in another action; that by dismissing the appeal and allowing the judgment to stand, it would constitute a bar to alternative relief in the suit and become res judicata in another action based upon invalidity of the contract; that should the contract be held on appeal invalid, trial court might, under general prayer for relief, grant taxpayers alternative relief in money damages; that

upon said motion the merits of the appeal should not be considered, but Supreme Court will presume, for purposes of the motion, that appellants would succeed on merits of appeal; therefore the question involved in the appeal is not a moot question. Holter v. Wagoner 32 S. D. 137, modified.

3.  Same—Dismissal of Appeal—Moot Question, Changed Circumstances Presenting—Res Judicata, Effect re Dismissal.

While appellate court should not retain an appeal for mere purpose of deciding a moot question, and appeal should be dismissed whenever changed circumstances pending same leaves but a moot question undetermined; yet whenever the judgment if left unreversed will preclude the defeated party as to a fact vital to his rights, such as validity of a contract upon which they are based, there remains more than a moot question, even though changed conditions the relief originally sought cannot be granted upon reversal.

4.  Injunctions—County Bridge Contract, Injunction By Taxpayers—Voidness, Voidability of Contract, Effect Re Injunction.

In a taxpayers' suit to enjoin execution of a county's contract with a bridge building company it is immaterial whether the contract is void, owing to failure to comply with statutory provisions necessary to its validity, or whether it is absolutely void regardless of the statute.

5.  Appeals—Dismissal of Appeal—Enjoining Executed County Bridge Contract—Temporary Injunction, Immateriality Of, Re Dismissal of Appeal—Effect of Performance, Re Defendants.

It is immaterial, upon motion to dismiss an appeal in a suit by taxpayers to enjoin defendant county and a bridge company from executing a bridge contract, whether a temporary injunction was or not granted; since defendants proceeded at their peril when suit was brought, and must have known that if injunction were finally granted, plaintiffs would be remanded to seek relief in money damages.

6.  Injunction—Restraining County Bridge Contract—Contract Violative of Public Policy—Allegations of Violations of Statutory Provisions, Effect re Relief.

Even though a violation of some public right or principle of public policy were an essential basis for plaintiffs taxpayers' right to relief by injunction against defendant county and a bridge company, (a point not conceded) yet, there being allegations of facts showing such violation, in view of the Bridge Law (Laws 1915, Ch. 106), which is intended for protection of public rights, motion to dismiss an appeal from the judgment in favor of defendants, after the contract had been executed pending proceedings below and on appeal, on ground that only a moot question is involved, will be denied.

Smith, J., concurring in the conclusion.
McCoy, J., dissenting.

Appeal from Circuit Court, Beadle County.  HON. ALVA E. TAYLOR, Judge.

Action by Richard W. Clarke, and Frank Jaehn, on behalf of themselves and other taxpayers, against the County of Beadle, and T. C. Young and others as County Commissioners of the County of Beadle, and The Iowa Bridge Company, a corporation, to enjoin the construction of certain bridges.  From a judgment for defendants, and from an order denying a new trial, plaintiffs appeal. On motion to dismiss appeal.  Motion denied.

*A. W. Wilmarth,* for Appellants.

*A. A. Chamberlain,* and *A. K. Gardner,* for Respondents.

(2) To point two of the opinion, Respondents cited:

In re Wilkins, 22 S. D. 135; C. M. & St. P. Ry. v. Sioux Falls, 28 S. D. 471; Hilter vs. Wagoner, 32 S. D. 137; 32 S. D. 252.

WHITING, P. J.  The county commissioners of Beadle county having entered into a contract with the Iowa Bridge Company for the building of certain bridges, plaintiffs, alleging the invalidity of such contract, brought this action, on behalf of themselves and other taxpayers of such county, to restrain the county and its officers from carrying out such contract and making payments thereunder, and asked for such other and further relief as to the court might seem just and equitable.  A temporary restraining order was denied.  Afterwards the bridge company was made a party defendant.  The cause was then tried upon its merits, and findings, conclusions, and judgment entered in favor of defendants.  From such judgment this appeal was taken, but no supersedeas bond was furnished.  After appellants' brief upon appeal had been filed, respondents moved a dismissal of the appeal, supporting such motion by affidavits from which it appears that the bridge company, pending the proceedings in the lower court and in this court, has completed its contract, and has received payment from the county for the work done.  Respondents contend that there is left but a moot question, and that this court should not retain this appeal for the purpose of passing upon such question.

[1] Appellants contend that this motion cannot be presented upon affidavits, and that the court can only consider the record

upon appeal. In this appellants are in error. Silvius v. Brunsvold, 32 S. D. 252, 142 N. W. 944.

[2] Respondents rely upon the ruling of this court in C., M. & St. P. Ry. Co. v. Sioux Falls, etc., 28 S. D. 471, 134 N. W. 46, and Holter v. Wagner, 32 S. D. 137, 142 N. W. 175. The decision in the first-mentioned case is not in point. The appeal therein was from an order refusing a temporary injunction, which order could not be pleaded as res judicata in any proceeding brought seeking alternative relief. It is true that in the latter case the proposition hereinafter discussed was suggested, but no authorities were cited in support thereof, and we failed to give that consideration which it otherwise should have received. We failed to note and consider that, though through no fault of the plaintiff a situation had arisen making it impossible to grant him the relief sought, he yet might be entitled to alternative relief in that action or to seek other relief in another action, and further to note and consider that, by dismissing the appeal and thus allowing the judgment of the lower court to stand, we allowed such judgment to stand as a bar to alternative relief in that action and as res judicata in any other action that might be brought based upon the alleged invalidity of the contract. We are of the opinion that the majority opinion in that case was erroneous.

[3] An appellate court should not retain an appeal for the mere purpose of deciding a purely moot question; and, whenever a change in circumstances pending an appeal is such that the appeal does present but a moot question, such court should dismiss same. However, both reason and authority support the proposition that ,whenever the judgment, if left unreversed, will preclude the party against whom it is rendered as to a fact vital to his rights, such as to the validity of a contract upon which his rights are based, it cannot properly be said that there is left before the appellate court but a moot question, even though on account of changed conditions the relief originally sought by appellant cannot be granted upon the reversal of such judgment. 2 R. C. 170; 4 C. J. 576.

It must be remembered that the change in circumstances upon which this motion is based was not brought about through the acts or efforts of appellants—they are not in any wise responsible for the fact that there has been such change in circumstances since the commencement of the action. If appellants were entitled to injunc-

tional relief, it was because a right had been violated. 22 Cyc. 749. This right was their right, as taxpayers, to have the contract entered into in accordance with the requirements of the statutes enacted for the taxpayers' protection. The fact that such relief cannot now be granted in no manner justifies this court in allowing an erroneous judgment to stand unreversed, thus leaving the fact that appellants' rights had been violated adjudicated against them and thus barred of all alternative remedies which otherwise would be theirs. If we should hold the contract invalid, the trial court may then, under the general prayer for relief, be able to give to the taxpayers, through these appellants and in this action, alternative relief in the way of money damages; or appellants, if successful here, might bring another action, as was done in McMillan v. Barber Asphalt Paving Co., 151 Wis. 48, 138 N. W. 94, Ann. Cas. 1914B, 54. In that case it was said:

"The defendant, after it was informed by the commencement of the other action that its contract was tainted with illegality, went on and performed the same at its peril. * * * The plaintiff is entitled to vindicate the rights recognized and established by the judgment in the action in which he prevailed. We find nothing in the conduct of the plaintiff which amounts to a waiver of his right to assert the illegality of the contract."

[4] We would call attention to the facts disclosed by the opinion in McMillan v. Paving Co. and in the "other action" referred to in the above quotation, being the action reported on appeal in McMillan v. City, 139 Wis. 367, 120 N. W. 240. It has been suggested that the facts here are to be distinguished from those disclosed in the Wisconsin cases because in those cases the alleged grounds of invalidity of the contract involved were fraud and collusion. It certainly makes no difference in a taxpayer's rights to an injunction whether the contract between the municipal corporation and the contractor is void, as claimed in this case, owing to a failure to comply with statutory provisions necessary to the validity of such contract. Certainly one's rights to an injunction based upon the absolute invalidity of a contract are as great as are his rights to an injunction based upon the voidability of a contract. In McMillan v. City, it will be found that a taxpayer was attempting to restrain the city from carrying out a contract entered into with a paving company. Upon the appeal it was held that the trial court

erred in refusing the injunctional relief. The paving company was not a party to that action. Thereafter, the plaintiff in that action brought the other action to recover from the paving company the amount of a special improvement bond which had been received by the paving company and by it assigned to a third party. The court held that, although the paving company was not a party to the first action, it was bound thereby because of the fact that its attorney, while appearing therein for the city, was in reality appearing for the paving company. That question is not presented in the case before us, because the bridge company is made a party to the pending action. In the Wisconsin cases it appears from the facts appearing in the second action that, pending the appeal in the first action, the contract had been completed and the bonds turned over, just as it is alleged has been done in this case. In the case against the city there does not appear to have been any motion to dismiss the appeal upon the ground that there was but a moot question left; but, if such motion had been made, it can readily be seen that it should have been overruled for the reason that there was left more than a moot question. That there was more than a moot question left is shown from the very fact of the success of the plaintiff in the second action. If, in the first of the Wisconsin cases, the appellate court had dismissed the appeal, thus leaving the judgment of the trial court unreversed, such judgment would have stood as res judicata against McMillan, and would have barred his recovery in the other action; and yet, as a matter of right, as found by the appellate court, although circumstances had arisen so that the relief to which he was entitled in the first action could not then be granted him, having been entitled to such relief, he was entitled, in lieu thereof, to alternative relief by way of damages. We have exactly the same situation here. Upon this motion we have no right to consider the merits of the appeal, but we are bound to presume, for the purposes of such motion, that, upon the merits of the appeal, appellants would succeed. To determine whether or not the question before us is but a moot question, let us ask what the situation would be if, upon the merits of this appeal, we should find that the trial court erred in refusing the injunctions. If we should so hold, then, just as in the second Wisconsin case, these taxpayers would have a right to seek, either through an amendment of their complaint in the action now pending, or else

through an independent action, to recover from the bridge company the difference between what the county has paid it and the amount to which it was equitably entitled, if anything.

It has been suggested that it would be impossible to undo what the bridge company has done. That is certainly true, and no one would contend that this or the trial court could now, by any equitable relief whatever, undo what has been done. But this court at least can see to it that the taxpayers are not barred (now that they have been denied the equitable relief, and provided we hereafter find they were wrongfully denied such relief) from recovering such damgaes as they may show themselves entitled to. Of course, if, upon the merits of the pending appeal, we shall decide that the trial court was right, by such decision we will hold that the appellants had no right to injunctional relief, and our adjudication will stand as a bar to any future claims that they may make based upon facts which would stand adjudicated against them by our sustaining the trial court. If we should determine that appellants were in the right and were entitled to have received the injunctional relief which they sought, they could then amend their pleadings in this action or bring another action and seek to recover money damages, as was done in McMillan v. Paving Co. It will then be time enough for the courts to determine whether or not the fact that the bridge is built and is of value to the municipality and the people thereof can be considered as a defense, counterclaim, or set-off to plaintiffs' demands. That is a matter with which at this time this court has no concern.

A case peculiarly analogous to the one before us is that of Green v. Okanogan County, 60 Wash. 309, 111 Pac. 226, 114 Pas. 457. In both cases all parties to the contract, including the county, the county commissioners, and the other contracting parties, were made defendants. In both cases the contract was attacked upon the ground that the commissioners had not complied with the statutory requirements. In both cases the trial court held against plaintiffs and entered judgment dismissing the action. In both cases it appeared, from affidavits filed subsequent to the perfecting of the appeal, that the contract had been executed. In both cases respondents sought a dismissal of the appeal on the ground that, the contract having been fully executed, nothing but a moot question remained. In the Green Case the court held that the court should

undo what had been done in so far as it could be undone, but that if it could not be undone the defendants should answer in damages for whatever they had done that could not be undone. The court said:

"The respondents moved to dismiss the appeal on the ground that there has been a cessation of the controversy. It appears from affidavits filed subsequent to the perfection of the appeal that the board of county commissioners executed the contract after the dismissal of the action in the court below, and it is contended that now there is nothing upon which the injunction can operate, as the acts of the defendants sought to be enjoined have been fully performed. But this contention mistakes the power of the court. It is true that when pending an appeal from the judgment of the lower court, and without any fault on the part of the respondent, an event occurs which renders it impossible to enter a judgment in favor of the appellant which will give any effectual relief, the court will not proceed to a formal judgment, but will dismiss the appeal, and it is held also that the same result will follow if the intervening event is owing to some voluntary act of the applicant. But no such result follows merely because the respondent has changed the status of the subject-matter in litigation. So in this case, if it appears that the contract entered into was subject to be enjoined because in violation of the statutes, the court may now inquire into the subsequent acts of the respondents, and compel them to undo what they have wrongfully done in so far as it is capable of undoing, and to answer in damages for anything that cannot be undone. This principle was announced in the early case from this court of Hartson v. Dale, 9 Wash. 379, 37 Pac. 475. * * * The decision was rested on the ground that it would be highly inequitable to allow any subsequent action of the respondent to have the effect of subjecting the appellant to the costs of a meritorious appeal, while the decision ought to have been rested on the ground we have before indicated, namely, that the court had power to enter an effectual decree by compelling the parties to undo what they had wrongfully done, or compel them to answer in damages therefor. * * * In Mills v. Green, 159 U. S. 651, 16 Sup. Ct. 132, 40 L. Ed. 293, the court used this language: 'If a defendant, indeed, after notice of the filing of a bill in equity for an injunction to restrain the building of a house, or of a railroad, or of any other

structure, persists in completing the building, the court nevertheless is not deprived of the authority, whenever in its opinion justice requires it, to deal with the rights of the parties as they stood at the commencement of the suit, and to compel the defendant to undo what he has wrongfully done since that time, or to answer in damages.' See, also, Tucker v. Howard, 128 Mass. 361.; Pennsylvania Co. v. Bond, 99 Ill. App. 535; Tate v. Field, 56 N. J. Eq. 35, 37 Atl. 440. The fact that no temporary injunction has been granted does not affect the kind or the extent of the remedy to which the plaintiff is entitled upon establishing his right at the hearing on the merits. Tucker v. Howard, supra."

[5] As held in the Green Case, it is immaterial, upon this motion, whether a temporary injunction was granted or not—in fact, it is immaterial whether it was asked for. Respondents were put upon their notice when the action was brought; they proceeded at their peril. No injunction being granted, they were at perfect liberty to go ahead and perform the contract, knowing that, if the court finally held that the injunction should have been granted, what they have done cannot and will not be undone, but that appellants would be remanded to seek relief in money damages. They proceeded with the full knowledge that if they performed the contract and it should eventually be held invalid, the proper parties would be liable to respond in damages.

It has been suggested that the case of Carr v. City of Montesano, 76 Wash. 380, 136 Pac. 363, is analogous to the case now before us, and should be recognized as controlling herein, being later in date than the Green Case. An examination of the Carr Case shows that there is no similarity between the facts therein and the facts in the case before us. The Carr Case was brought against the city, its treasurer and deputy treasurer, to restrain the paying of a warrant. The warrant was issued in payment of a claim that was concededly valid, but the contention was that the warrant brought the indebtedness of the city above the constitutional limit. No service was made upon the city treasurer; the only issue joined being with the city. The trial court held that the city had not reached its constitutional limit of indebtedness, and dismissed the action. Plaintiff appealed. After such appeal taken there was a showing made that the warrant had been paid, and a motion was made to dismiss upon the ground that the controversy had ceased.

It clearly appeared that there were no other outstanding warrants. The warrant was paid by the city treasurer, who had not been made a party to the action. The party to whom the warrant was paid was not a party to the pending appeal, and no question as to him was involved. Upon such facts the court held that the question of the legality of the warrant had become a moot question. In view of the fact that the bridge company is a party to this action, and that, unless barred by the judgment entered herein, appellants may have a right to recover against such bridge company, as was done under like circumstances in the Wisconsin case, it is clear that the Carr Case is not analogous to this case.

It is also suggested that the still later case of Barber Asphalt Paving Co. v. Hamilton, 80 Wash. 51, 141 Pac. 199, is analogous to and controlling in this case. A study of the facts in the Hamilton Case will show that the decision therein was based upon facts not to be found in the case now before us. In the Hamilton Case plaintiff had bid for certain work to be done for the county of which defendants were commissioners; after it made its bid and was entitled to a contract—in fact it is claimed that a contract had been let to plaintiff—the county, through defendants, attempted to cancel plaintiff's contract, to reject all bids theretofore made, to readvertise for bidders, and to enter into a new contract. The plaintiff brought this action to restrain defendants as commissioners from entering into a contract with any other and from canceling the contract which they claimed had been entered into with plaintiff company. The defendants pleaded certain matter in the way of defense which they claimed showed that the contract with plaintiff was not binding upon them, and, by a second or supplementary answer pleaded that they had readvertised for bids and had entered into a contract with a third party who had entered upon the performance of the work; and defendants further alleged that such contract was then approximately performed. On the final hearing in the trial court it appeared that the check which accompanied plaintiff's bid had been returned to plaintiff *and accepted by it,* and the defendants moved in the trial court for a dismissal of the action for insufficiency of evidence and because the complaint did not state a cause of action. Such motion was granted, and the plaintiff appealed. A motion to dismiss the appeal was made upon the ground that the controversy had ceased; that the right to injunctive relief no longer existed;

that the questions presented were moot questions, and upon other grounds. Two questions were considered by the appellate court: First, whether the right to injunctive relief had ceased; and, second, whether the complaint—to which neither the state nor the county was a party—stated a cause of action for damages. The court held rightfully that all right to injunctive relief had ceased to exist, and that it was impossible to undo what had been done, which could only be undone by the tearing up of the work that had been performed by the second contractor, and this public policy would forbid. There was thus left but the question as to whether, as against any party to such action, there would rest a right of action for damages. If not, it was clear there was but a moot question. The court calls specific attention to the fact that the only parties to the action were the board of commissioners; that there was no claim that, upon the remanding of the case, damages could be sought against the county commissioners personally—"in fact the appellant disclaims the right to any relief against the commissioners personally"; and that there was no allegation, such as would show that the plaintiff had been damaged, and therefore had any right of action against anybody for damages, even if the parties against whom he might recover had been made parties to the then pending action. The court calls attention to the necessity of either the state or the county being a party defendant to an action for damages, and to the further fact that the plaintiff did not request any amendment or offer to amend its complaint so as to state facts showing actual damages or so as to bring before the court either the state, "which the plaintiff believed the proper party to respond in damages," or the county, "which the [trial] court evidently believed the proper party to respond in damages." The court calls attention to the fact that this failure to allege any damages or to seek to make party to the action those who would be liable in damages, if any, "clearly distinguish that case from the situations presented in Green v. Okanogan County * * * and Graff v. Tacoma [61 Wash. 186, 112 Pac. 250]." The court further calls attention to the fact that plaintiff did not ask the appellate court to remand so that the complaint could be amended. All the above shows that, under facts such as we have before us, we have a case coming absolutely under the rule announced in the Green Case and in no respect controlled by the Hamilton Case.

[6] Our Colleague suggests that the facts, as alleged by plaintiffs, involve no violation of public policy. Even though a violation of some public right or principle of public policy were an essential basis for plaintiffs' right to relief, a fact which we do not concede, yet there is not lacking allegations of facts showing such a violation. Plaintiffs allege numerous violations of those provisions of the Bridge Law (chapter 106, Laws 1915) which are intended for the protection of public rights.

The motion to dismiss is denied.

SMITH, J., concurs in the conclusion.

McCOY, J. (dissenting). I am unable to concur in the conclusion reached by my Associates in the foregoing opinion. Neither can I concur in the view that the decision in Holter v. Norbeck & Nicholson Co. et al. should be overruled. It appears from the record that the commissioners of Beadle county let and entered into a contract with the Iowa Bridge Company to construct seven steel bridges in said county; that after the letting of said contract, and before the beginning of this action, the bridge company purchased, had manufactured, and delivered at the place of construction the structural steel and iron portions of said bridge material so cut, shaped, and with holes drilled therein for bolting together said particular bridges, for the purpose of constructing the same under and by virtue of the terms of said contract. This suit was instituted at the instance of certain taxpayers who were dissatisfied with the letting of the contract for the construction of said bridges. At the time this suit was commenced an order to show cause based on the allegations of the complaint only was procured by plaintiffs, who thereby sought to obtain injunction, pending suit, restraining the respondents from paying out any money on said contract for the construction of said bridges. Upon the hearing of said order to show cause the trial court by order denied the motion and application for such injunction. No appeal was ever taken from this order. The complaint in this case seeks no other remedy than injunction to enjoin and restrain the county of Beadle and its county commissioners from paying to the Iowa Bridge Company the contract price for constructing said bridges on the sole alleged ground that certain statutory requirements were not observed in the letting of said contract. No fraud of any kind was alleged in relation to the letting of said contract. No injunction was sought to prevent

the execution of said contract or the construction of said bridges. On the trial the court made findings and entered judgment dismissing plaintiffs' complaint as being without merit. Appeal has been taken to this court from said judgment without supersedeas or stay bond.

It appears from the record that at the time of the trial 75 per cent. of the construction of said bridges had been completed, and that since the rendition of judgment the entire work of constructing said bridges has been fully completed, and that the county treasurer has fully paid all warrants drawn by the county auditor on him in payment of said bridges so constructed and completed under and by virtue of said contract. It also appears from the record that neither the county treasurer nor the county auditor are parties to this action. At no time has there ever been anything to restrain the bridge company from executing and carrying out its contract or from constructing said bridges according to contract. At no time has there been anything to restrain the commissioners of Beadle county, or the auditor or treasurer, from issuing, drawing, or paying county warrants for the construction of said bridges. Under these circumstances I am of the view that the appeal should be dismissed on the ground that the remedial controversy, as made by the pleadings, between the parties to this suit has ceased to exist. I am of the view that the sole and only remedial controversy, as made by the pleadings, was whether or not plaintiffs, as taxpayers, were entitled to an injunction restraining the *payment* to the Iowa Bridge Company of the contract price for the construction of said bridges, and nothing more; and that, under the record as it now appears before this court, any judgment this court might now render would be ineffectual for any purpose, *since the right to injunctive relief—the only relief sought and the only relief which would ever have been possible under any view of the pleadings—has now ceased to exist.* The italicized concluding clause of the last preceding sentence is quoted from the case of Barber Paving Co. v. Hamilton, 80 Wash. 51, 141 Pac. 199, being a case "on all fours" with the case at bar, in which the Supreme Court of Washington dismissed the appeal on the ground that the controversy had ceased to exist, and distinguished the case from that of Green v. Okanogan, cited by Judge WHITING in the majority opinion. As

39—Vol. 40, S. D.

will be observed, in the Okanogan Case the plaintiffs' sought to enjoin the making of the contract before any construction of the bridge had been commenced, and the only thing done towards the construction of the bridge, at the time the motion to dismiss the appeal was made, was to *sign the contract,* but which contract in no manner had been carried out and no part of the bridge constructed; while in the case at bar, and in the Barber Paving Co. Case, the injunction was to restrain the *payment* only of the contract price, and it appeared on the motion to dismiss that the work of construction under the contract had been largely performed at the time of the trial, and wholly performed and paid for at the time of the motion to dismiss. I am clearly of the view that the case of Green v. Okanogan County, and also the case of McMillan v. Barber Asphalt Co., cited by Judge WHITING, have no possible application to the question involved in the case at bar. It will be observed in the McMillan Case that the contract was alleged to have been made as the result of fraud between the contracting parties. Some of the members of the city council were directly interested in the paving contract, and a part of the relief sought in that case was to set aside the entire contract and transaction on the ground of fraud, and in which action the defendants were alleged, and the court so found, to be guilty of fraudulent wrongdoing, and who necessarily had notice and knowledge of their own fraudulent acts. I have no criticism to make of the decision in that case based upon the facts before that court, as the court had the undoubted power to compel the undoing of what the defendants had done by virtue of their fraud as disclosed by the record. This case at bar is clearly within the rule announced in Barber Asphalt Paving Co. v. Hamilton. Another very recent and instructive case from the Supreme Court of Washington, later than the Okanogan Case, is the case of Carr v. City of Montesano, 76 Wash. 380, 136 Pac. 363, being a case brought by a taxpayer to restrain the city from *paying* for certain street improvements, and being a case in principle precisely the same as the case at bar. In that case, as in this, a motion was made to dismiss the appeal on the ground that after the trial of the case warrants were drawn against the treasurer to pay the contract price for such street improvements, and the warrants had been paid. In that case it was held that the city treasurer was not a party to the suit, and there was no injunction in force re-

straining him from the payment of such warrants, and under such circumstances the court held that the appeal should be dismissed. In that case the court distinguished between the case of Hartson v. Dale, 9 Wash. 379, 37 Pac. 475, on which the decision in the Okanogan County Case was based. In disposing of Barber Asphalt Paving Co. v. Hamilton, the court, among other things, said:

"From the facts established by the affidavits above referred to it is clear that the injunctive relief asked for cannot be granted. It is also clear that no mandatory injunction, placing the parties in statu quo by compelling the commissioners to undo what they have done, can issue. No court would require the tearing up of the pavement, already practically completed at the time of hearing the appeal, in order that the plaintiff might be permitted to proceed with its alleged contract and replace the work along plans not now approved by the county commissioners. A sound public policy would forbid it."

I am of the view that this court cannot, and would not under the record in this case, require the tearing down of the bridges in question and put in statu quo the parties as of the time when this action was commenced in order to be in a position to sustain an injunction. Under our system of remedial law as provided for in this state in section 454, Code Civ. Proc., persons who desire injunction against the construction of public improvements and payment therefor have the remedy of applying for an injunction, pending suit, and section 454 provides that when a party shall give immediate notice of appeal from an order *denying an injunction,* he may, within three days thereafter, serve an undertaking, etc., and thereby secure the stay mentioned in section 453. This is the undertaking that should have been given to protect the bridge company after the refusal of the trial court to grant the injunction pending suit. The trial court might have granted the injunction in the first instance, without bond; but the appellant, after the order denying the temporary injunction was issued, was bound to appeal and put up a supersedeas stay bond in order to stop the bridge company from completing the construction and receiving pay for said bridges. It is beside the mark to say that the appellant might have maintained a suit for injunction, without the necessity of an injunction pendente lite, and thereby have obtained the same result; because, if no injunction pending suit had been applied for, and if the con-

struction of the bridges had been completed and paid for before the trial, the trial court would then have been as powerless to grant a permanent injunction as it would ever at any time have been after the thing sought to be enjoined had been done.    Were a suit commenced seeking an injunction, without an injunction pendente lite, the defendant would not be required or obliged to cease construction of the public work after the service of the process and before trial, and at the time of the trial there might cease to exist any cause for preventive relief.    If before the trial in the lower court the bridge had not been completed or paid for, where the finding and judgment were in favor of the contractor, even then such contractor might still have completed the construction and received his pay therefore, in the absence of a supersedeas appeal bond that would stay procedure and construction pending appeal, and whenever such completed construction were made to appear before the court, where the only relief sought was preventive by means of injunction, the appeal should be dismissed on the ground that the cause for such relief had ceased to exist.

Unless a dissatisfied taxpayer has been able to secure an injunction pending suit, or where he has been ruled against on his application for such injunction, and has not availed himself of the provisions of sections 453 and 454, there would be no reason existing why a contractor should not be permitted to proceed in good faith and complete his contract and receive his compensation therefor.    These provisions of the statute furnish the dissatisfied taxpayer with a remedy, and, unless he avails himself thereof, the construction of the improvement should not be interfered with.    If dissatisfied taxpayers can so stop the construction of public improvements without injunctions, and without appeal bonds to protect their rights, no contractor would ever be safe in taking a contract to construct a public improvement, and the public under such circumstances would always be at the mercy of a small dissatisfied minority which nearly always exists.    Of course where there is a fraudulent contract, such as was shown in the McMillan Case, the same, on the ground and by the reason of fraud, should be set aside and canceled and the contractors under such circumstances would not be entitled to compensation by reason of their fraud; but a case of that kind would be based upon an entirely different reason than that involved in a case where no fraud is alleged and wherein no violation of public policy is involved.    Under the rule

of the majority opinion, contractors acting in good faith would be left in an abominable mess by being compelled to stop work on public improvemnets or take chances on the result of the suit in cases where no fraud was alleged and wherein no injunction or stay bond for the protection of their rights was in existence. It seems to me that the provisions of sections 453 and 454 were intended to meet and prevent just such a situation. Take the circumstances of the Holter Case as an illustration. There a contract was let to construct certain artesian wells. After construction had been commenced and the work partially completed, an injunction pending suit was issued which on hearing was vacated. No appeal was taken from the order of vacation, and no undertaking given to stay proceedings or protect the rights of the contractors. The original suit was subsequently tried out, and findings and judgment rendered in favor of the contractors, from which an appeal was taken without supersedeas bond. No legal restraint then existing, the contractors completed the wells, and were paid therefor. Thereafter motion to dismiss the appeal was granted by this court on the ground that the things sought to be enjoined had been fully done, and that further action on the part of the court would be idle and of no avail. In that case, as in this, the complaint sought no other than injunctive relief. No fraud was alleged or claimed, and no cause of action for damages alleged. *The facts alleged warranted no other alternative relief.* The contract was one the parties had a right to make. Under the circumstances of the Holter Case, as well as those in this case, it ought not to be justly said that the contractors voluntarily completed the construction of the public improvements where no injunction or other stay prevented them from so doing. The delay necessarily incident to a trial through the courts would have been ruinous and highly damaging in view of the fact that such contractors necessarily employ many laborers and much machinery in such work, and to permit, under such circumstances, or by a rule of law, that which would necessarily result in the holding up of such construction, and placing the contractor in such a dire predicament, would be unreasonable and unjust. Under such circumstances contractors should not be held to the voluntary act rule announced in the Okanogan Case, which the Washington courts have refused to follow in subsequent cases

based on facts precisely the same as those existing in the case at bar and in the Holter Case.

The decisions in these cases dismissing appeals, where the thing sought to be enjoined had been accomplished, are based on the rule and reason that if, pending an appeal, an event occurs which makes a determination of the appeal unnecessary, or renders it clearly impossible for the appellate court to grant the relief under the pleadings and record, the appeal will be dismissed. 4 C. J. 584, and note citing Holter v. Norbeck & N. Co., Barber Asphalt Paving Co. v. Hamilton, and Carr v. Montesano, supra, as sustaining the text. This general rule is based on the elementary reason that a court cannot restrain the removal of a house after the house has been removed. In this case it must at all times be remembered and observed that the appellant sought only *preventive relief* by means of an *injunction*. In the Barber Paving Co. v. Hamilton and the Carr v. Montesano Cases, the voluntary acts of the contractors in completing the work, and the voluntary act of *payment* therefor by the officers of the municipalities, were not considered, under the circumstances of those cases, as voluntary acts that would warrant the denial of the motion to dismiss the appeals under the rule announced in the Okanogan Case.

The circumstances before the court on the motion to dismiss the appeals in these subsequent Washington cases in principle are precisely the same, as the facts or grounds for dismissal of the appeal in this case. Under the facts and record in the Barber Co. v. Hamilton Case, the decision was right and in accordance with the general rule application to the facts of that case. No fraud was alleged or claimed, no cause of action for damages, and no question of public policy involved. There might be cases where the record indicated that the judgment of dismissal of the appeal might preclude other remedial rights, where such rights appear to have been involved in the case; but the record in this case shows that no such other remedial rights exist, under the issues raised by the pleadings in this case. The only relief sought by appellant under the pleadings was injunctive and preventive. If other and more comprehensive relief had been sought and facts had been alleged warranting damages, or a cancellation of the contract

on the ground of fraud, or other alternative relief, or had sought the restraining of the construction of the bridges upon the ground of fraud or other illegality, we would then have a very different case before us. This very proposition is well considered in Barber Asphalt Co. v. Hamilton. The pleadings in this case will be searched in vain for the statement of any fact which would authorize any other relief than that of preventive injunction. The order refusing to grant the injunction pending suit in this case was an appealable order. Section 462, Code Civ. Proc. The issues raised on the hearing of this order were as broad and comprehensive as could have been the issues on the trial of the merits, as the application for the injunction pendente lite was based solely on the allegations of the *complaint,* and being the *same complaint* used on the trial and now before us on this appeal. Intermediate court orders from which an appeal may be taken, if not appealed from, become conclusive and res judicata as to all the issues raised by the moving papers on which the order was based. Herman on Estop, and Res Judicata, § 472. The order denying the injunction in this case became conclusive as against the appellants on all questions involved therein, when they failed to appeal therefrom.

So far as appears from the record there is no question involved on this appeal other than that concluded by the failure to appeal from the order refusing the injunction. If the Halter Case is to be overruled, so also must be the case of C., M. & St. P. Ry. Co. v. Sioux Falls, 28 S. D. 471, 134 N. W. 46, as both cases are based on the same principle with the same basic facts. But the majority opinion seeks to distinguish between the Sioux Falls and the Holter Cases, and as a distinguishing feature says:

"The appeal therein was from an order refusing a temporary injunction, which order could not be pleaded as res judicata in any proceeding brought seeking alternative relief."

In that case, where the appeal was from the order refusing a temporary injunction, this court properly dismissed the appeal because no supersedeas bond under said section 454 had been given, and where the thing sought to be enjoined had been done and accomplished at the time of the motion to dismiss the appeal. As I view this proposition, the reasons for dismissing the appeal in this case are much stronger than in the Sioux Falls Case because in this case no appeal was taken at all from the order refusing to grant

the injunction, nor anything done to prevent the bridge company from going on and completing its contract. In this case the appellant wholly abandoned his application for injunctive relief. In the Sioux Falls Case the appellant, evidently knowing that it must appeal from an order refusing temporary injunction, failed to give the required bond to stay the construction of the work. The taking of the appeal in the Sioux Falls Case, if such appeal had been made effective by a proper stay bond, would certainly have rendered the issues involved in the order appealed from immune against the claim of res judicata in the appellate court on that appeal; but as no proper stay bond was given that would stop the completion of the work, and it having been shown that in the meantime the work had been completed, the appeal was properly dismissed. Here in this case and in the Holter Case, where no appeal at all was taken that would prevent the issues involved in the order refusing to grant an injunction from becoming final and res judicata, a different rule is to be applied, because the same issues on the same complaint were tried over again at a later date. If, after the second trial of the issues on this same complaint, an appeal had been taken, with proper stay bond, and by reason of such stay the bridges were not yet completed, this motion to dismiss should be denied; but where no proper stay bond was given, and the work has been completed, the same as in the Sioux Falls Case, this case then is still in exactly the same legal situation as that case. There is no possible distinction between the principle involved in the Sioux Falls Case and the case present. It is a strange logic which applies a different rule in this case. The distinctions between the Sioux Falls Case and the Holter Case are wholly without any legal differences. In the Sioux Falls Case no other relief was sought than injunctive. No alternative relief was sought other than injunctive by the appellant in this case. No fraud was alleged, no claim for damages made. The injection into this case of the questions and issues of fraud, damages, and alternative relief are mythical imaginations, as no *facts are alleged* pertaining to any such issues. Causes on appeal should not be disposed of on imaginary issues not presented by the record.

In the Barber Asphalt Co. v. Hamilton Case the Supreme Court of Washington refused to consider the question of damages because not an issue framed by the pleadings in that case. I cite

the rule announced in this case particularly for the reason that the majority opinion is based upon and seeks to apply the rule of the Okanogan County Case to the facts of the case at bar; but I am of the opinion that careful judicial consideration of the Washington cases will demonstrate that the instant case now before us is clearly within the rule and the facts of Barber Asphalt Co. v. Hamilton, and that the Okanogan Case has no application whatever to the facts of this case. It was so held in the Barber Asphalt Co. Case. As stated in some of these Washington opinions, each and every motion to dismiss an appeal must be based upon the facts and circumstances and the record peculiar to each particular case. It will serve no useful purpose to cite the very numerous decisions from almost every jurisdiction in the land sustaining the rule in Barber Asphalt Co. v. Hamilton, which is to the effect that, where the relief sought is purely preventive in its nature, and where it appears that the thing sought to be prevented has occurred, and has become a thing of the past, the reason for such relief has ceased to exist, and therefore becomes a moot question.

For all the reasons heretofore cited, I am of the opinion that the appeal in this case should be dismissed.