RAPID CITY JOURNAL COMPANY, a
corporation, Petitioner,

v.

The CIRCUIT COURT OF the SEVENTH
JUDICIAL CIRCUIT WITHIN AND
FOR PENNINGTON COUNTY, South
Dakota, and the Honorable Merton B.
Tice, Jr., Judge of Said Court, Respondents.

No. 12353.

Supreme Court of South Dakota.

Argued Sept. 18, 1978.

Reassigned Jan. 11, 1979.

Decided Sept. 26, 1979.

Richard O. Gregerson, of Woods, Fuller, Shultz & Smith, Sioux Falls, Richard M. Schmidt, Jr., Martin J. Gaynes, and Ian D. Volner, of Cohn & Marks, Washington, D. C., for amici curiae, American Society of Newspaper Editors, National Newspaper Ass'n, Radio Television News Directors Ass'n, The Reporters Committee For Freedom of the Press Legal Defense and Research Fund, and The South Dakota Press Assn.

James R. Cregan, Washington, D. C., of counsel, for National Newspaper Assn.

Jack C. Landau, Washington, D. C., of counsel, for The Reporters Committee For Freedom of the Press.

J. Laurent Scharff, Washington, D. C., of counsel, for Radio Television News Directors Assn.

George A. Bangs, of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for petitioner.

Bruce A. Hubbard, of Morrill, Hansen & Hubbard, Sturgis, for respondents.

MORGAN, Justice (on reassignment).

In this original action in certiorari, the Rapid City Journal Company (petitioner) challenges the action of the trial court in closing to the public the jury *voir dire* portion of a criminal trial for second-degree manslaughter allegedly resulting from an abortion. The closure orders in question had expired by the time the petition for certiorari was filed, but, for reasons later discussed, we agreed to issue the writ and consider the merits of the case. We conclude that the method used by the trial court to exclude the public was improper.

Defendant in the case-in-chief was widely known as a leader of the pro-abortion forces in this state, and the case became a *cause celebre* for both pro-abortion and anti-abortion groups.[1] The trial opened in the usual manner. After a number of prospective jurors had been drawn and some preliminary questions asked of them, the court, counsel for both parties, and defendant withdrew to chambers where defendant waived his right to public trial for the remainder of the jury selection portion of the trial. Through his counsel, defendant moved the court to exclude the public from that portion of the proceedings and sequester the prospective jurors. The prosecution joined in the motion and the trial court entered an oral order to that effect. The order was later reduced to writing after a reporter employed by petitioner entered the courtroom during a recess in the *voir dire* and refused to leave until ordered by the court to do so.

The trial court held a press briefing at the close of each day of the jury selection and divulged general information regarding the *voir dire*. After the jury was impaneled, the courtroom was again opened to the press and public. The prosecution ended upon the trial court's entry of a directed verdict of acquittal after the state rested its case.[2]

■■■ The threshold question is whether the writ should be dismissed for mootness since the orders presented to us for examination expired by their own terms at the close of the *voir dire* of the jury. This court has recognized that, as a matter of judicial policy, appellate opinions are not given for the purpose of settling abstract or theoretical questions but only to decide actual controversies which have injuriously affected the rights of a party to the litigation. *Clarke v. Beadle County,* 40 S.D. 597, 169 N.W. 23 (1918). Accordingly, an appeal will be dismissed as moot where, before the appellate decision, there has been a change of circumstances or the occurrence of an event by which the actual controversy ceases and it becomes impossible for the appellate court to grant effectual relief.[3] *Campbell v. Fritzsche,* 78 S.D. 593, 105 N.W.2d 675 (1960); *Dodds v. Bickle,* 77 S.D. 54, 85 N.W.2d 284 (1957); *State v. City of Veblen,* 56 S.D. 394, 228 N.W. 802 (1930).

■ A well-recognized exception to the general rule, however, is that jurisdiction will lie even though the order attacked has expired "if the underlying dispute between the parties is one 'capable of repetition, yet evading review.'" *Nebraska Press Assn. v.*

---

1. Added attention was drawn to the case because the Attorney General stepped in to prosecute the case after the state's attorney refused to do so.

2. A copy of the transcript of the *voir dire* proceedings was made available to petitioner at the close of the trial.

3. The general rules of mootness apply to an application for a writ of certiorari. See, e. g., *Winegard v. Oxberger,* 258 N.W.2d 847 (Iowa 1977); *State v. Schmiesing,* 243 Minn. 11, 66 N.W.2d 20 (1954); *State v. Brown,* 216 Minn. 135, 12 N.W.2d 180 (1943).

*Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683, 690 (1976). The United States Supreme Court recently applied this exception in *Gannett Co. v. DePasquale,* — U.S. —, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), a case strikingly similar to the case at bar. In that case, the trial court granted defendant's motion, unopposed by the prosecution, for an order excluding the press and public from a pretrial suppression hearing on a murder charge. By the time the Supreme Court granted certiorari, the suppression hearing was over and the press had access to the transcript of the hearing. The Court stated the two conditions which must be met for the exception to apply: " '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.' " — U.S. at —, 99 S.Ct. at 2904, 61 L.Ed.2d at 620, quoting *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, 353 (1975). Under the facts of the case, the Supreme Court concluded that the conditions were met and its jurisdiction was not defeated.

We find the exception equally applicable in this case. It is apparent that petitioner had no opportunity to litigate the question of the validity of the closure orders prior to the time the orders expired. It is also reasonable to expect that petitioner will be subjected to a similar order in the future. Therefore, we conclude that the writ should not be dismissed for mootness even though the actual controversy between the parties ceased upon expiration of the orders attacked.[4]

The principal issue presented is whether the constitutions of the United States and South Dakota confer upon the public in general, and the press in particular, a right of access to criminal trials. In *Gannett Co. v. DePasquale,* supra, the same general issue was explored by the United States Supreme Court, although that case dealt with an order excluding the press and public from a pretrial hearing rather than from a stage of the actual trial itself.[5] The decision in *Gannett,* however, is binding on us to the extent it disposes of the argument made by petitioner here that the "public trial" guarantee of the Sixth Amendment confers upon the public[6] a constitutional right of access to criminal proceedings.

In *Gannett,* the majority rejected the suggestion that the Sixth Amendment's guarantee of a "public trial" was intended to benefit the public. According to the Court, the right to a public trial is personal to the accused since the intention of the Framers was to bestow a benefit on the defendant. An analysis of the common-law history and nature of the public's interest in public trials led the Court to conclude that, even though strong societal interests in publicity do exist, the independent public interest in enforcing the Sixth Amendment guarantee is not tantamount to a constitutional right on the part of the public to do so. Accordingly, in a 5–4 decision, the Court held that "members of the public have no constitutional right under the Sixth and Fourteenth Amendments to attend criminal trials."[7] — U.S. at —, 99

---

4. Under similar circumstances, the exception was also applied in *United States v. Cianfrani,* 573 F.2d 835 (3rd Cir. 1978); *Commercial Printing Co. v. Lee,* 553 S.W.2d 270 (Ark.1977); *Northwest Publications, Inc. v. Anderson,* 259 N.W.2d 254 (Minn.1977).

5. *Voir dire* of the jury is part of the trial itself. See *Commercial Printing Co. v. Lee,* supra; *United States v. Woods,* 364 F.2d 481, cert. den. 385 U.S. 972, 87 S.Ct. 511, 17 L.Ed.2d 436 (3rd Cir. 1966).

6. The *Gannett* case inferentially supports the well-settled propositions that the press has standing to bring a suit such as the instant one, but enjoys no greater or less rights than members of the general public. See, e. g., *Houchins v. KQED, Inc.,* 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978); *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Saxbe v. Washington Post Co.,* 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974); *Commercial Printing Co. v. Lee, supra.*

7. The Court's holding is couched in broad terms and seemingly encompasses all phases of a criminal trial in spite of the fact that the case involved a pretrial hearing.

S.Ct. at 2911, 61 L.Ed.2d at 628. In light of this recent decision on this point, we are constrained to hold that petitioner in the case at bar had no right to attend the *voir dire* proceedings by virtue of the Sixth Amendment's guarantee of a public trial.

■ Neither do we feel that South Dakota's version of the Sixth Amendment, found in art. VI, § 7 of the South Dakota Constitution,[8] yields petitioner a right of access to criminal proceedings. The South Dakota provision is no more stringently phrased than the corresponding federal provision and contains no suggestion that a different result is required in this case than was reached by the Supreme Court in the *Gannett* case.

Furthermore, we note that petitioner's argument that the common law gives rise to a constitutional guarantee to the public of open criminal trials is less persuasive when applied to our state constitutional provision since South Dakota from its inception has been a code state rather than a common-law state. The Civil Code as adopted by the Territorial Legislature in 1866 and the Code of Criminal Procedures as adopted by the Territorial Legislature in 1875 had their origins in the work of the Field Commission in New York and far predated the constitutional provisions adopted in 1889.

■ Accordingly, we hold that petitioner has no constitutional right of access to any phase of a criminal trial by virtue of either the state or federal guarantee of a public trial.

Petitioner also argues that a constitutionally protected right of access flows to the press via the First Amendment.[9] The same argument was raised in the *Gannett* case, but on this point the majority opinion in *Gannett* is vague. With two concurrences, one supporting and one rejecting the argu-

ment, the majority opinion first skirted the issue by stating "even assuming, *arguendo*, that the First and Fourteenth Amendments may guarantee such access in some situations, a question we do not decide, this putative right was given all appropriate deference by the state *nisi prius* court in the present case" and "the actions of the trial judge here were consistent with any right of access the petitioner may have had under the First and Fourteenth Amendments." —— U.S. at ——, 99 S.Ct. at 2912, 61 L.Ed.2d at 629. The majority stated further that "the trial court balanced the 'constitutional rights of the press and the public' against the 'defendants' right to a fair trial.'" Id. All the foregoing language seems to indicate that the majority recognized such a constitutional right; however, on the next page we find the following language:

> [W]e are asked to hold that the Constitution itself gave the petitioner an affirmative right of access to this pretrial proceeding, even though all of the participants in the litigation agreed that it should be closed to protect the fair trial rights of the defendants.
>
> For all of the reasons discussed in this opinion, *we hold that the Constitution provides no such right.*

—— U.S. at ——, 99 S.Ct. at 2913, 61 L.Ed.2d at 630. (emphasis added)

■ Mr. Justice Powell stated in his concurrence that he would explicitly hold that the reporters had an interest protected by the First and Fourteenth Amendments, but Mr. Justice Rehnquist in his concurrence took issue with that view. Clearly then, four of the five justices on the majority opinion held that the First Amendment right does not exist and we would have to assume that if the dissenters had any opinion to the contrary they would have said so. We are therefore bound to accept the opin-

---

8. That provision states:

In all criminal prosecutions the accused shall have the right to defend in person and by counsel; to demand the nature and cause of the accusation against him; to have a copy thereof; to meet the witnesses against him face to face; to have compulsory process served for obtain-

ing witnesses in his behalf, and to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

9. See note 6, supra.

ion to the effect that the constitution provides no such right.[10]

Further, we hold that no such right of access is guaranteed by art. VI, § 5 of the South Dakota Constitution,[11] which affords the press no greater rights than its federal counterpart does. We conclude, however, that in closing the *voir dire* portion of the trial upon motion of the defense joined in by the prosecution, the trial judge did err in failing to afford the members of the press an opportunity to be heard. This decision is based upon the concepts, recognized by the Supreme Court in *Gannett,* that the press and public have traditionally had access to criminal proceedings and history supports the notion that public trials are the norm. We believe this tradition of access to courtroom activities should not be lightly discarded. Consequently, we hold that certain minimum safeguards must be provided whenever a motion to exclude the public is presented to a trial court in this state. These safeguards are imposed not because the right of access has risen to constitutional proportions and the due process clause therefore requires that they be afforded, but because the interest of the public in open proceedings has long been recognized as a cornerstone in preserving the quality and integrity of the judicial process. —— U.S. at ——, 99 S.Ct. at 2907, 61 L.Ed.2d at 623 and —— U.S. at ——– ——, 99 S.Ct. at 2926–2933, 61 L.Ed.2d at 646–655, for discussions by both the plurality and the dissent of the common-law tradition of open proceedings.

We conclude that the following procedures will satisfy the interests of the public without placing too onerous a burden on either the defendant, the state, or the trial court. Those persons present in the courtroom when a motion for closure is made must be afforded notice and a hearing prior to the trial court's ruling on the motion.[12] At the hearing, the burden should be placed on the party requesting the closure to present a factual basis to support his motion.[13] The test the trial court should use in making its determination is whether or not a defendant's right to a fair trial will be jeopardized if the motion is denied.[14] Additionally, to facilitate appellate review of the trial court's order, the trial court should make findings of fact and conclusions of law which support its decision.[15]

The fact that this case involved exclusion of the public from the *voir dire* portion of the trial does not alter our decision. It is true that in most cases less reason exists to exclude the public from the *voir dire* than from any other stage of the trial. *Commercial Printing v. Lee,* 553 S.W.2d 270 (Ark.1977). The *voir dire* in the instant case was exceptional, however, because the questions asked were not the standard type asked of prospective jurors in criminal cases. The jurors were questioned about their opinions concerning abortion, their religious affiliations, whether their views on abortion matched the views of their church, whether they had met the defendant, and, if so, under what circumstances.[16] The nature of these questions

---

**10.** We wish to emphasize, as did the Supreme Court in the *Gannett* case, that the central issue in this case is right of access. We are not concerned with the issue presented in *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), where a "gag order" was held to be an unconstitutional prior restraint in violation of the First Amendment's guarantee of freedom of the press.

**11.** S.D. Const. art. VI, § 5, reads in part:
Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right.

**12.** See *Northwest Publications, Inc. v. Anderson,* 259 N.W.2d at 257 (Minn.1977). Although that case involved a prior restraint, we find the

procedures set forth in that opinion sound as applied to the facts of this case.

**13.** See note 12, supra.

**14.** See *Gannett v. DePasquale,* —— U.S. at ——, 99 S.Ct. at 2916, 61 L.Ed.2d at 634, for concurring opinion of Justice Powell.

**15.** See note 12, supra.

**16.** The fact defendant was a medical doctor, whose practice was widely known to include performing abortions, made questions relating to a juror's acquaintance with defendant much more personal than in a usual criminal case.

was highly personal and potentially embarrassing, especially if publicized, although necessary to the selection of an impartial jury. The Sixth Amendment, the South Dakota Constitution,[17] and general principles of due process guarantee a defendant a trial by an impartial jury. *Ristaino v. Ross,* 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976). The purpose of the *voir dire* examination is to ascertain the state of mind of prospective jurors so an impartial jury can be chosen. *State v. Endreson,* 109 Ariz. 117, 506 P.2d 248 (1973). Since the trial court has the duty of assuring a defendant his right to an impartial jury, *State v. Myers,* 190 Neb. 466, 209 N.W.2d 345 (1973), he has the discretion to close the *voir dire* to public scrutiny if, in his considered judgment, he deems it necessary after a hearing is held.

Unfortunately, no hearing was held in the instant case so we have no record upon which to decide whether the trial court's discretion was properly exercised. Nevertheless, although cases where a *voir dire* such as this one is necessary will most likely arise only infrequently there is no reason to believe that a similar situation will never occur again. We see no reason, therefore, to exempt the *voir dire* portion of the trial from the guidelines set forth in this opinion regarding the proper procedure to exclude the public.[18]

In conclusion, although no purpose would be served by now vacating the trial court's orders, this court would have done so for all the foregoing reasons had the orders been presented to us before they became moot.

DUNN, J., concurs.

WOLLMAN, C. J., concurs specially.

FOSHEIM, J., concurs in part and dissents in part.

HENDERSON, J., deeming himself disqualified, did not participate in this opinion.

17. See note 8, supra.

18. The more usual case where this procedure will be necessary is in a fact situation such as was presented in the *Gannett* case where exclusion stemmed from the defendant's fear that

WOLLMAN, Chief Justice (concurring specially).

I agree with that portion of the majority opinion which holds that the public and the press have no right of access to criminal trials under the Sixth Amendment to the United States Constitution or art. VI, § 7 of the South Dakota Constitution.

I would adopt the views expressed by Justice Powell in his concurring opinion in *Gannett v. DePasquale,* —— U.S. ——, 99 S.Ct. 2898, 61 L.Ed.2d 608, and hold that under the First Amendment to the United States Constitution and art. VI, § 5 of the South Dakota Constitution, petitioner had the right of access to the proceedings here in question, subject to limitation only in accordance with the procedures set forth in the majority opinion.

FOSHEIM, Justice (concurring in part, dissenting in part).

I agree that the writ in this case should not be dismissed for mootness. I also concur in that part of the majority decision which holds that no absolute public right of access to criminal trials flows from the First Amendment. I dissent, however, from the court's disposition of the Sixth Amendment issue. In my opinion, the Sixth and Fourteenth Amendments afford the public an affirmative right of access to criminal trials.

The United States Supreme Court, in *Gannett Co. v. DePasquale,* —— U.S. ——, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), expressly reserved the question whether the First and Fourteenth Amendments afford to the public a right of access to criminal trials. This, together with the fact that, in my view, *Gannett* is limited to pretrial proceedings, compels me to part with the majority in its reliance upon *Gannett* as a basis for its rejection of petitioner's First

adverse pretrial publicity would preclude him from finding an impartial jury if potentially inadmissible evidence discussed at a pretrial suppression hearing were publicized by the media.

Amendment claim. I agree, however, that there is no such right rooted in the First Amendment. The history of the First Amendment lends, at best, only inferential support to petitioner's claim.

The majority opinion's rejection of petitioner's claim that the Sixth Amendment affords the public a right of access to criminal trials, ante, at 566–567, is based upon its interpretation of certain language from Part V of the plurality decision in *Gannett.* That language reads: "[M]embers of the public have no constitutional right under the Sixth and Fourteenth Amendments to attend criminal trials." —— U.S. at ——, 99 S.Ct. at 2911, 61 L.Ed.2d at 628. At first blush, this language seems to support the majority's disposition of the Sixth Amendment issue here. However, I think the character of the proceeding involved in *Gannett* is noteworthy. The Supreme Court frames the issue there as follows: "The question presented in this case is whether members of the public have an independent constitutional right to insist upon access to a *pretrial judicial proceeding* . . . ." —— U.S. at ——, 99 S.Ct. at 2901, 61 L.Ed.2d at 616 (1979) (emphasis added). The issue is restated near the end of the opinion in terms of *pretrial* proceedings. —— U.S. at ——, 99 S.Ct. at 2913, 61 L.Ed.2d at 630.

This causes me to question whether the language in *Gannett* extends to the trial itself. Such an interpretation is particularly questionable in light of Mr. Chief Justice Burger's concurring opinion, which states: "By definition a hearing on a motion before trial to suppress evidence is not a *trial*; it is a *pre*trial hearing." —— U.S. at ——, 99 S.Ct. at 2913, 61 L.Ed.2d at 630 (Burger, Chief Justice, concurring) (emphasis in original). Mr. Justice Powell's concurring opinion casts further doubt on the proposition that there is no Sixth Amendment right of access to criminal trials. Although Justice Powell's opinion addresses only the First Amendment question expressly reserved by the plurality, it is nevertheless couched in terms of pretrial proceedings.

Accordingly, I do not agree that *Gannett* is dispositive of petitioner's Sixth Amendment claim here. The considerations which militate against recognition of an absolute right of access to pretrial proceedings under the Sixth Amendment are not as compelling with regard to the trial itself. I, therefore, dissent from that portion of the majority opinion dismissing petitioner's Sixth Amendment claim.