STATE EX REL. ARNOLD GROZBACH v. COMMON SCHOOL
DISTRICT NO. 65, ETC., CONSOLIDATED SCHOOL DISTRICT
NO. 18, GOODHUE COUNTY, AND OTHERS.[1]

June 17, 1952.

No. 35,798.

*C. A. (Gus) Johnson* and *Johnson & Johnson,* for relator.

[1]Reported in 54 N. W. (2d) 130.

*Holst, Erickson, Vogel & Richardson* and *Rockne & Rockne,* for respondents.

*Peterson & Popovich* (for Independent School District No. 38, Ramsey county, and Consolidated School Districts Nos. 4 and 5, Chisago county) ; *Glasrud & Fleming* (for Joint Independent School District No. 39, Ramsey county, and No. 103, Washington county) ; and *Philip L. Scherer* (for Independent School District No. 63, Sibley county) filed separate briefs *amici curiae.*

LORING, CHIEF JUSTICE.

This is an original proceeding in this court in the nature of quo warranto to test the validity of the organization of Consolidated School District No. 18 of Goodhue county. With permission of the court, briefs have been filed by *amici curiae.*[2]

The following questions are raised in the proceedings:

(1) Were the acts providing for reorganization of school districts unconstitutional in that they were in violation of Minn. Const. art. 4, § 27?

(2) Were the acts invalid in that they constituted an unlawful delegation of judicial and legislative power and set up procedures lacking in due process of law?

(3) Was the reorganization election invalid in that:

    (a) Some polling places were in homes?

    (b) There was a change in one voting place?

    (c) One person was not allowed to vote?

    (d) There were alleged defects in the appointment of election judges?

(4) Was the purported assumption of part of the bonded indebtedness of one of the former districts without the authority of the statute and thus invalid?

---

[2] Except for relator's reply brief and the brief of one of the *amici curiae,* the briefs have not complied with the rules of this court. We granted permission to file typewritten briefs, but this did not mean that all indexing, listing of cited authority, etc., should be omitted. By the form of the briefs, the court was given an unnecessary burden.

The case was submitted on briefs, and the facts are taken from the petition, answer, affidavits, and documents submitted.

L. 1947, c. 421, was an act entitled: "An act to provide a survey for reorganization of school districts and appropriating money therefor." L. 1949, c. 666, was entitled: "An act relating to the survey for reorganization of school districts; amending Laws 1947, Chapter 421, Sections 1, 2, 4, 6, 8, 9, 12, 13, and 14, and adding three new sections, numbered 16, 17 and 18."

Pursuant to L. 1947, c. 421, at least 10 days' notice was given, and a meeting was held November 18, 1947, in the high school auditorium at Red Wing of all members of school boards in Goodhue county. With a quorum present, the school board members voted to establish a school survey committee. The county superintendent of schools then divided the members into two groups, rural and urban. After further subdividing, the groups elected survey committeemen.

The committee met from time to time and filed a tentative report September 1, 1948. A notice of the filing was published. Meetings were scheduled and held, affording residents of the areas affected an opportunity to be heard on the questions. November 1, 1948, the survey committee filed a final report, which included a recommendation that the school districts be reorganized according to maps included in the report. Notice of the filing was posted and published in the *Zumbrota News* November 4, 1948. December 11, 1950, the report was amended to change the boundaries of the proposed district and to include a recommendation that a later election be held on the question of assuming part of the bonded indebtedness of the then district No. 68. The amendment was filed and notice given January 30, 1951. Five public hearings on the report were held from April 6 to April 12, 1951.

April 23, 1951, an act of the legislature (L. 1951, c. 706) was approved entitled: "An act relating to school districts and the organization, reorganization, consolidation and dissolution thereof; amending Minnesota Statutes 1949, Sections 122.19, 122.20, 122.21,

122.22, 122.26, 122.28, 122.52 and 122.55, Subdivisions 2 and 4, and adding new Subdivisions 5 and 6."

May 14, 1951, written notice was posted according to law and published in the *Zumbrota News* of an election to be held May 25, 1951, on the question whether stated school districts and parts of districts should be reorganized into district No. 18. Various polling places were set up for this election, both in the rural and urban areas. Majorities in both the rural and urban areas voted for the reorganization.

May 28, 1951, the county school superintendent issued a notice for filing the names of candidates for the school board, which notice was published May 31, 1951, in the *Zumbrota News*. June 29, 1951, after notice, an election was held and the school board members were elected. August 9, 1951, notice was posted and published of an election to be held on the question whether district No. 18 should assume part of the bonded indebtedness of former district No. 68. The election was held August 23, 1951, when the urban districts voted in favor of the assumption and the rural districts did not.

February 26, 1952, a writ issued from this court to respondents "to respond to this Writ by answer, plea or demurrer, as you may be advised, and show Quo Warranto you hold and exercise the respective offices of the School Board of said Consolidated School District No. 18 and Show Cause why said organization of said Consolidated School District No. 18 of Goodhue County, Minnesota should not be declared illegal, void and of no effect and why the said individual respondents pretending to hold the respective offices should not be excluded therefrom and they be required to pay the costs and disbursements of this action and abide the further order, proceedings and judgment of this Court herein."

■ We need not decide whether L. 1947, c. 421, and L. 1949, c. 666, are unconstitutional under Minn. Const. art 4, § 27, insofar as they relate to reorganization. Those acts, without going into detail, provided for the setting up of survey committees and for the reports of such surveys. In addition, the acts purported to provide for elections and other procedures for the reorganization of school

districts in the state. Relator concedes (Relator's brief, pp. 8, 9) that, insofar as the acts provide for surveys, meetings, reports, and recommendations, the provisions were within the titles of the acts; but relator contends that provisions for reorganization are not within the titles. Even if we assume that the reorganization provisions were not properly within the titles to the 1947 and 1949 acts, the acts nevertheless are valid insofar as they provide for the surveys, with the committee's reports and recommendations. The provisions with reference to survey and recommendation are not so connected with the provisions for reorganization that it must be presumed that the legislature would not have passed the one without the other. The legislature might well have provided for the survey and recommendation with a view to further proceedings under existing law. See, M. S. A. 1945, c. 122.

In State ex rel. Finnegan v. Burt, 225 Minn. 86, 90, 29 N. W. (2d) 655, 657, where we held that the invalidity of part of a statute does not require that all of the statute be held invalid, we said, quoting from State ex rel. Anderson v. Sullivan, 72 Minn. 126, 133, 75 N. W. 8, 9:

"* * * The familiar rule on the subject is that, although a part of the statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other. Cooley, Const. Lim. 210."

Our conclusion here is supported by M. S. A. 645.20.[3]

---

[3] M. S. A. 645.20 provides:

"Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void

We hold that at least insofar as the acts of 1947 and 1949 provide for a survey, which would ordinarily include a recommendation, they are constitutional. It is not necessary in the case at bar to decide whether the other provisions are constitutional. Courts will not decide questions of constitutionality unless it is absolutely necessary to do so. State v. One Oldsmobile Sedan, 227 Minn. 280, 35 N. W. (2d) 525.

For the purposes of this opinion only, we may assume that the acts of 1947 and 1949 were invalid insofar as they related to the reorganization itself, as distinct from a survey. Nevertheless, the election was valid under L. 1951, c. 706. The title of that act is obviously broad enough to cover reorganization of the school districts.[4] The act is not vitiated by the statement at the end of the title that the 1951 act amended certain sections of Minnesota Statutes 1949. It should be noted that the 1951 act did not merely amend the 1947 act as amended in 1949; it also amended school district consolidation proceedings as provided by earlier enactments.

Nor is the 1951 act invalid because it amends L. 1947, c. 421, and L. 1949, c. 666. As stated above, the 1951 act amended more than the 1947 and 1949 acts and, in fact, did not in its title directly mention the 1947 and 1949 acts as such at all. At any rate, even though a statute is partly invalid, an enactment amending the former statute may itself be valid. Cf. State ex rel. Salter v. McDonald, 121 Minn. 207, 209-210, 141 N. W. 110, 111. We hold that L. 1951, c. 706, does not violate Minn. Const. art. 4, § 27.

The question remains whether the election proceedings were properly within the 1951 act. Where an act re-enacts a former act with some additional requirements, after passage the amendatory act is the only enactment on the subject as to future transactions. State

one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent."

And see, 6 Dunnell, Dig. § 8919.

[4]See, State v. Helmer, 169 Minn. 221, 223-224, 211 N. W. 3, 4; State v. Cassidy, 22 Minn. 312, 21 Am. R. 765; State ex rel. Nash v. Madson, 43 Minn. 438, 45 N. W. 856.

ex rel. Markham v. Elmquist, 201 Minn. 403, 405, 276 N. W. 735, 736 (quoting from a New York case).[5]

M. S. A. 645.21 provides:

"No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature."

Since the 1951 act does not provide for retroactive effect, we are concerned only with whether prospective effect is sufficient to bring the reorganization proceedings within the statute. The 1951 act likewise does not provide a time at which it was to take effect. Therefore, under § 645.02, effect is given to the enactment as of the day following its enactment.

L. 1951, c. 706, § 7 (M. S. A. 122.52), provides in subd. 1 that if the final report of the survey committee recommends reorganization the question is to be submitted to legal voters residing in the proposed district only, at an election to be called prior to April 1, 1953. It provides that the election date shall not be determined until at least 30 days after the last public meeting on the recommendations, and that the election and notice must be in accordance with M. S. A. 122.21, except that the filing of a petition is not required. (Section 122.21 provides for 10 days' notice and the procedure for holding

---

[5] "A statute providing that a previous one shall be amended 'to read as follows,' repeals everything contained in the old statute and not embodied in the new, and the new statute is to be construed, as to any action had after the amendment, as if the statute had been originally enacted in the amended form. [Citing cases.] That is, all the provisions of the old law which continue in force after the passage of the amendatory act derive their force thereafter, not from the original, but the amendatory, act. [Citing cases.]

"An amendment of a statute 'to read as follows,' is not, however, to be construed as repealing and re-enacting that statute. [Citing cases.] The portions of the amended section which are merely copied without change are considered to have been the law all along. [Citing cases.] The new provisions are construed as enacted at the time the amendment took effect. [Citing cases.] Except for these distinctions, an amendment which incorporates the old law is of no different effect from one made in the form of an independent statute." State ex rel. Maryland Cas. Co. v. District Court, 134 Minn. 131, 136, 158 N. W. 798, 800.

such election.) The election for reorganization must be by a majority vote in favor of the project in both the urban and rural districts. L. 1951, c. 706, § 7, subd. 2, provides:

"The county superintendent, with the approval of the county survey committee, shall determine the date of the election, the number of voting precincts, the polling places where such voting shall be conducted and the hours the polls will be open. Wherever possible election shall be held in the school building of the school district included in the proposal. The polls shall be open for at least two hours, and may be open for a longer period, not to exceed 12 hours, if so designated in the posted and published notices. The county superintendent, with the approval of the county survey committee, shall appoint three election judges who shall be school board members if available for each polling place, which judges shall act as clerks of election, and canvass the ballots cast and thereafter submit the same to the county superintendent and the county survey committee."

Section 8 of the act provides for the election of a school board for the new district.

The facts stated above show that the proceedings for the reorganization of the several districts met the requirements of the 1951 act as paraphrased and quoted in this opinion. This being so, unless there were other defects yet to be taken up, the election and reorganization were valid regardless of whether the 1947 and 1949 acts were unconstitutional insofar as they provided for the reorganization itself.

■ Relator contends that the challenged acts were invalid in that they constituted an unlawful delegation of judicial and legislative power and set up procedures lacking in due process of law. While relator raises the question, no argument is given to this proposition except as it relates to the assumption of part of the bonded indebtedness of former district No. 68. When a proposition is not argued, it is deemed waived. *E. g.*, Olson v. Davis, 215 Minn. 18, 9 N. W. (2d) 344; 1 Dunnell, Dig. & Supp. § 366; cf. The Maytag

Co. v. Commr. of Taxation, 218 Minn. 460, 17 N. W. (2d) 37. There-
fore, except as it relates to the bonded indebtedness, we shall not
discuss the question.

■ L. 1951, c. 706, § 7, subd. 2 (M. S. A. 122.52[2]), provides:
"Wherever possible election shall be held in the school building of
the school district included in the proposal." In the instant case,
in some of the districts homes were designated as the polling places.
Respondents assert that no schoolhouses were available in those
districts, and this is not contradicted by relator.

In the case of one such voting place, because of repairs being
made to the house, the polling place was changed. Affidavits by
two of the election judges state that the wives of the two judges
personally called on all the legal voters in the district two or three
days in advance of the election to give the voters notice that the
polling place had been changed. The affidavits further state that all
the legal voters in the area concerned, 15 in number, did in fact
vote at the election.

An affidavit by one Reynold Schultz, a resident of district No. 156,
part of which was brought into the new district, states that he was
not allowed to vote. Two affidavits submitted by respondents state
that, although Schultz was a resident of district No. 156, he was a
resident of that part of the district outside the proposed consoli-
dated area. This is not contradicted by relator. Assuming the facts
to be true, as we must, under the statute Schultz properly was ex-
cluded from voting.

Relator alleges a defect in the appointment of the election judges
in that the county superintendent mailed to the school board mem-
bers of the area of the proposed district a letter which said in part:

"You are hereby individually appointed as judges of this election
* * *. If it will be impossible for you to serve, will you please select
an alternate judge in your place and notify me of such selection."

L. 1951, c. 706, § 7, subd. 2 (M. S. A. 122.52[2]), also provides:

"* * * The county superintendent, with the approval of the
county survey committee, shall appoint three election judges who

shall be school board members if available for each polling place, * * *."

Relator argues, first, that it is not shown that approval was given by the committee, and, second, that the superintendent could not legally delegate his authority to others. In In re Common School Dists. Lyon and Yellow Medicine Counties, 231 Minn. 40, 44, 42 N. W. (2d) 393, 395, we said:

"* * * in respect to completed official transactions, public officers having charge thereof will be presumed, in the absence of an affirmative showing to the contrary, to have performed their duties in connection therewith at the time and in the manner and form required by law, and that the burden of overcoming this presumption rests with the party alleging the contrary."

In the case at bar, there is no showing that approval was not given nor that the superintendent's attempted delegation of authority was exercised. Since there was no showing otherwise, we shall presume that the superintendent did get approval from the survey committee and that the appointed judges served.

Where a mere minor technical irregularity does not prevent a fair election and it is shown that a fair election was had, such irregularity does not invalidate the election. Compare In re Special Election in School Dist. No. 68, 183 Minn. 542, 237 N. W. 412, with Ferguson v. City of Morris, 197 Minn. 446, 267 N. W. 264; and see, 2 Dunnell, Dig. & Supp. § 2960. Particularly is it true that minor technical irregularities can have no effect on the jurisdiction of school district organization proceedings. In re Common School Dists. Lyon and Yellow Medicine Counties, 231 Minn. 40, 43, 42 N. W. (2d) 393, 395.

■ Relator asks that the assumption of part of the bonded indebtedness of former district No. 68 be set aside. There are two reasons why this problem may not be taken up at this time. In the first place, the writ as issued from this court required respondents only to "show Quo Warranto you hold and exercise the respective offices" and "why said organization of said Consolidated School

District * * * should not be declared illegal * * *." This does not include questions as to the assumption of bonded indebtedness. Therefore, that question is not properly before the court.

Furthermore, proceedings in the nature of quo warranto are not an available remedy insofar as the assumption of these bonds is concerned. In State ex rel. Lommen v. Gravlin, 209 Minn. 136, 137, 295 N. W. 654, 655, we said:

"* * * the main purpose of the information is to prevent the purchase of the material for uniforms without competitive bidding. Such course, in the absence of emergency, would be a violation of the statute. 3 Mason Minn. St. 1940 Supp. § 53-18e. Respondent King, as state auditor, is joined in the effort to prevent what is considered by relator an illegal expenditure of public funds.

"The objection, raised by the demurrer and motion to quash, is well taken. It is that the writ of *quo warranto* is not allowable as preventive of, or remedy for, 'official misconduct and can not be employed to test the legality of the official action of public or corporate officers.' High, Extraordinary Legal Remedies (2 ed.) § 618, p. 485. The authorities generally accord with this rule."

In that case, we sustained the demurrers and granted the motions to quash the proceeding in the nature of quo warranto. See, also, 5 Dunnell, Dig. & Supp. § 8066.

We hold that the reorganization of school district No. 18 was proper and according to valid law, and that the questions of assumption of bonded indebtedness are not before this court.

Writ discharged.