STATE EX REL. AUGUST KLITZKE AND OTHERS v.
INDEPENDENT CONSOLIDATED SCHOOL DISTRICT
NO. 88, McLEOD COUNTY, AND OTHERS.[1]

November 20, 1953.

No. 36,136.

[1]Reported in 61 N. W. (2d) 410.

336

*Hall & Forbes* and *Gordon Forbes,* for relators.

*Lauerman, Johnson & Gustafson* and *Hubert G. Smith,* for respondents.

NELSON, JUSTICE.

This is a proceeding in quo warranto originally commenced in this court. The writ issued out of this court was dated June 3, 1953. There has been no reference or trial of any fact issues. All material facts involved herein have been determined by a stipulation entered into between the parties through their respective counsel on July 9, 1953. The material facts are as follows:

The rural and urban school board members of McLeod county, Minnesota, met November 13, 1947, and elected a school survey committee for the county, as then provided by statute. It was composed of nine members; five chosen from the rural districts and four from the urban. The school board duly met annually thereafter and filled any vacancies which occurred on the committee.

The majority of the survey committee members chosen were also members of urban or rural district school boards. One of the rural survey committee members, namely, Chester Graupmann, was a county commissioner of McLeod county when elected to the committee on January 7, 1947. He served until the passage of L. 1949, c. 666, § 3, which made state and county elective officials ineligible to serve as survey committee members. He resigned shortly thereafter.

The McLeod county survey committee was duly and properly organized, held meetings, studied school organization problems of the county, and made tentative and final reports thereof as required by law. The final report of the committee was duly and properly issued on November 1, 1948, over the signatures of the nine mem-

bers of the committee. Proposal "E" of this report described the territory which the committee proposed for a reorganized school district, later to be designated as Independent Consolidated School District No. 88 of McLeod county.

The proposal for reorganization was then duly and properly submitted to the legal voters of the proposed district by the committee and the McLeod county superintendent of schools in elections called and held pursuant to law and the petitions and requests of voters of both the rural and urban areas on December 7, 1951, on February 15, 1952, and July 16, 1952, with the urban area voting in favor and the rural area against the proposal on each occasion. The second and third elections were held only after repeated requests of the rural and the urban voters followed by the approval of the survey committee and call of the superintendent.

The area included in proposal "E" was as follows: School Districts 9, 30, 32, 64, 71, 72, 78, and 86 Joint and portions of School Districts 4, 7, 16, 26, 31, 37, 49, 50, 55, and 68 of McLeod county.

School District No. 86, as included in the proposal for reorganization, was joint with District No. 77 of Sibley county. The McLeod county portion consisted of only 280 acres. Independent Consolidated District No. 82 of Sibley county was established pursuant to reorganization of March 12, 1952, and included District No. 77, thus leaving the 280 acres comprising McLeod District No. 86 unattached and without a schoolhouse or school facilities. Therefore, the board of county commissioners of McLeod county by due and lawful proceedings under statutory authority attached the McLeod county portion of less than four sections remaining from District No. 86 to the reorganized Sibley county District No. 82. The order of the board dated August 7, 1952, removing Joint District No. 86 from the area thus left no portion of District No. 86 to be reorganized under proposal "E" of the survey committee report.

Following the third election of July 16, 1952, certain farmers in the rural areas concerned desired another election. Forms of petitions were obtained from the state department of education, circulated in the rural areas included in proposal "E" where the prior

elections were lost, and presented to the county survey committee, signed by a majority of the rural families. The petition requested reorganization of all the districts previously listed in proposal "E," with the exception of District No. 86 which was already attached to Sibley county District No. 82. Reference may be had to the stipulated facts for form of petition.

The part of the area described and referred to as Joint District No. 86 was likewise dropped from the notice of election as issued and posted and the official form of ballot used. Reference may be had to the stipulated facts for form of ballot.

The fourth election was duly held on March 6, 1953, pursuant to notice issued, published, and posted by the McLeod county superintendent of schools. The proposed reorganization was carried by a majority vote in both the urban and rural areas.

As a result of the fourth election, the McLeod county superintendent of schools duly issued an order of reorganization for the area included in proposal "E," omitting therefrom District No. 86 previously attached to District No. 82 of Sibley county. The order dated March 16, 1953, established the area into Independent Consolidated School District No. 88 of McLeod county, Minnesota.

All of the individual respondents named in these proceedings, excepting George Lehmkuhl, were duly elected as members of the school board of said reorganized District No. 88 at elections duly called on May 19, 1953, and they have continued on the board, employing respondent George Lehmkuhl as superintendent of that school district until his resignation on July 6, 1953. Wesley Abram, one of respondents who was elected to the reorganized school board on May 19, 1953, was then and is still holding the appointive office of McLeod county supervisor of assessors.

No further recital of facts is necessary.

The general issue involved here is whether the respondent school district was legally and properly formed and incorporated, and whether the respondent officers are properly holding and exercising the offices thereof.

Under the pleadings and the stipulation of facts, the specific issues are:

(1) Are the positions of school board member and county survey committee member incompatible, and if so, what is the result of such incompatibility?

(2) Were the positions of county commissioner and survey committee member incompatible prior to the passage of L. 1949, c. 666, § 3, approved April 25, 1949, and if so, what is the effect?

(3) Are more than two elections allowed under M. S. A. 122.52?

(4) Where a part of a school area proposed to be reorganized under § 122.40, *et seq.*, is set over to an adjoining district by a board of county commissioners pursuant to § 122.53, must the county survey committee amend its report excluding such area prior to an election?

(5) Are the offices of county supervisor of assessors and member of board of education of independent school district incompatible, and if so, what is the result?

■ We are concerned here with the application of L. 1947, c. 421, coded as §§ 122.40 to 122.54, entitled an act to provide a survey for reorganization of school districts and appropriating money therefor, and any amendments thereto.[2]

Relators take the position that school board members are not eligible to serve on school reorganization survey committees for the reason that they are elective state officers and therefore disqualified on grounds of incompatibility, and they cite as authority for their position State ex rel. Bd. of Christian Service v. School Board, 206 Minn. 63, 287 N. W. 625. But that case deals with the question of whether or not members of a school board who are performing governmental functions are to that extent acting for and in behalf of the state in its sovereign capacity. This court held in that case that education and the administration of it are both governmental operations, made so by our constitution, and that

---

[2]See, also, L. 1949, c. 666; L. 1951, c. 305; L. 1953, c. 744.

under those circumstances and the facts of that case the members of the board are *public agents* (Sanborn v. Neal, 4 Minn. 83 [126], 77 Am. D. 502), and therefore that costs and disbursements could not be taxed against the board by the prevailing party in a civil action. Relators' position that school board members are elective state officers is not sustained by that decision.

There is a clear distinction between an elective state officer, as far as designation is concerned, and an elective county officer, school district officer, and the officers of municipal subdivisions. The legislature had this in mind when in § 122.43 it provided that "None of the members of the school survey committee shall be persons who are professionally engaged in education or who are employees of any school district" and also when they amended § 122.43 by L. 1949, c. 666, § 3, to enlarge this provision to exclude elective state or county officers in the following manner: "None of the members of the school survey committee shall be persons who are professionally engaged in education or elective state or county officers or who are employees of any school district."

Section 122.42 provides for each county superintendent to call a meeting of all school board members within the county sometime prior to December 1, 1947, at which he is to have explained the provisions of the reorganization law and submit the question of whether the school board members wish to have a county school survey committee organized.

Section 122.43 provides for the election of a school survey committee, five to be selected by the rural members and four to be selected by the urban members, finally constituting a county school survey committee of nine. Section 122.43 further provides that, subject always to the limitations and qualifications above stated, nominations for members of the committee may be made from the floor by any school board member in the respective groups. Twenty-five percent of the school board members in each group shall constitute a quorum at any meeting, and a majority of those present at any meeting shall control the action and proceedings of the group. Election of the members of the committee shall be by secret

ballot. A majority vote shall be necessary to elect and thereafter the persons elected shall be certified by the chairman and secretary of the group to the county superintendent. It is clear, from these provisions and the procedure therein provided for, that elective school board members were not excluded from service on the school survey committee provided for.

The members of the school survey committee have their duties, as well as manner of procedure, prescribed under L. 1947, c. 421, as amended by L. 1949, c. 666, § 8, which duties consist only of making recommendations by report after preliminary studies and procedure and approving calls for another election if the first one fails. The question of reorganization is always left to the voters by an election held, and vote canvassed and reported, in accordance with the provisions of § 122.21. Clearly school board members are eligible to serve in both capacities at one and the same time, and the school survey and reorganization statutes so contemplate. This is implicit in the statutes themselves.

■ The majority of the members elected to the school survey committee were school board members. The others held no office, excepting Chester Graupmann who had been elected to the board of county commissioners of McLeod county and qualified as such on January 7, 1947. Mr. Graupmann served upon the committee as a member from its inception to June 27, 1949, when he resigned. This resignation came as a result of the provisions of L. 1949, c. 666, § 3, coded as § 122.43, being an amendment of L. 1947, c. 421, § 4, making elective state or county officers ineligible to serve on the committee. He was succeeded by a farmer and rural school board member who has held the same position to this date.

There was nothing incompatible between the positions of county board member of McLeod county and member of the county school survey committee, which committee constitutes only a recommending body. Therefore, no objection can be made to the membership of Chester Graupmann prior to the time of the passage of L. 1949, c. 666, making state and county elective officers ineligible to serve on the committee. The report of the school survey committee had

been completed in 1948. His disqualification under the amendment of L. 1947, c. 421, did not become effective until April 25, 1949, the date of the legislative approval of the amendment, and Chester Graupmann resigned June 27, 1949. There was no action on the part of the survey committee between the dates of April 25, 1949, and June 27, 1949.

■ The final report of the school survey committee was completed and issued November 1, 1948, under the signatures of the then nine members of the committee and the required notices and filing of copies was completed. The proposal for reorganization included what was known as the Brownton area of McLeod county and a part of School District No. 86 located in Sibley county. The reorganization recommended that School Districts Nos. 9, 30, 32, 64, 71, 72, 78, and 86 Joint, and portions of School Districts Nos. 4, 7, 16, 26, 31, 37, 49, 50, 55, and 68 of McLeod county be reorganized into an independent school district. Pursuant to law and the petitions and requests of residents of the area included, elections were duly called and held on December 7, 1951, on February 15, 1952, and on July 16, 1952, with the result that in each instance the proposal was carried in the urban area and defeated in the rural area. The second and third elections, as well as the first, were called by the county survey committee only after urban and rural residents made repeated requests therefor.

After the third election and on the 7th day of August, 1952, the county board of commissioners of McLeod county, Minnesota, was advised that under L. 1947, c. 421, as amended by L. 1949, c. 666, and L. 1951, c. 706, School District No. 86, McLeod county, Minnesota, had been divided by the reorganization and consolidation of the Winthrop School District No. 82 of Sibley county. School District No. 86 had been a joint school district with part of its area located within Sibley county and part of it in McLeod county. The portion of School District No. 86 located in McLeod county comprised 280 acres, less than four sections, and after this division came under the provisions of L. 1947, c. 421, as amended by L. 1949,

c. 666, coded as § 122.53, and subject to the part which reads as follows:

"In case of the reorganization of two or more districts or parts of districts into a larger district, any portions or parts of divided districts which have less than four sections of land shall be attached to one or more adjoining districts by the board of county commissioners upon due notice and hearing as provided in Minnesota Statutes, Section 122.03."

Pursuant thereto and after publication and service of notice of hearing had been made as required by law and no objections having been heard thereto by the said county board, the said 280 acres were by order of the board of county commissioners of McLeod county attached to a newly reorganized district of Sibley county, namely, Independent School District No. 82 on the 7th day of August 1952. This removed School District No. 86 Joint from the report made by the school survey committee, and the Brownton area proposed by the school survey committee was thereby reduced in area to the extent of 280 acres.

L. 1949, c. 666, amending § 122.52 by the addition of paragraph (3) thereof, approved April 25, 1949, was enacted to take care of the situation where an election has failed under the recommended reorganization plan. Paragraph (3) reads as follows:

"In case an election for reorganization has been held in accordance with the provisions of this act, and such election has failed, the county superintendent, with the approval of the county survey committee, may call another election in any proposed district at which time the same recommendation or a revised recommendation, approved by the state advisory commission, shall be submitted to the voters. Such election shall be conducted in accordance with the provisions of this act."

Following the third election farmers residing in the rural areas where the reorganization plan had been defeated determined that they wished another election. One of these farmers and a voter in this school area called at the department of education in St. Paul

and informed an official of their desire and obtained a form of petition from the official. These petitions were circulated among the members of the rural area and signed by the representatives of a majority of the rural families therein. Upon presentation of these signed petitions to the survey committee, it entered its approval and a call followed for a fourth election whereby it was proposed to reorganize the areas as set out in their former notices of election. The county superintendent of schools of McLeod county duly issued, published, and posted notices of election which was held March 6, 1953, at which election the proposal carried by 169 for to 21 against in the urban area and 254 for to 217 opposed in the rural area. Following this result the county superintendent of McLeod county duly issued an order of reorganization for the area contained in the proposal for reorganization, of the county survey committee, omitting therefrom only that portion consisting of the 280 acres of the Joint District No. 86 situated in McLeod county which had on August 7, 1952, by order of the county board of commissioners of McLeod county been attached to the reorganized Independent School District No. 82 of Sibley county. The order of reorganization of the Brownton area was dated March 16, 1953, and it established Independent Consolidated School District No. 88 of McLeod county, Minnesota.

Does L. 1947, c. 421 (§ 122.52 [3] as amended), which permits the county superintendent with the approval of the county survey committee to call "another election" in any proposed district, only permit one more or a second election; or may the county superintendent, with the approval of the committee, call a third or fourth or fifth election if so requested by a majority of the qualified voters of the district. It is relators' contention that the words "another election" are intended to mean and do mean only one more election and that the statute authorized only two elections on any school reorganization issue. Since there were four elections following the recommendations of the school survey committee, his contention would mean that the last two elections were null and void. Relator has cited the case of Lewis v. Hogan, 51 Minn. 221, 53 N. W. 367,

as authority for his position together with the case of State ex rel. Woodruff-Dunlap Printing Co. v. Cornell, 52 Neb. 25, 71 N. W. 961. These cases are not in point. The issues involved are easily distinguished from those being considered here. We are inclined to the view that the words "another election" in our statute mean another or subsequent election and that any number of elections would be valid providing the statutory requirements of § 122.52 were substantially complied with. It is urged that municipalities and voters as well must not be harrassed or badgered by the calling of several elections. The answer here is that another election was only called upon the petition of a majority of the legal voters, and where a majority has petitioned for it, no injustice can result in holding the election.[3] Section 645.08(2), Canons of Construction, reads as follows:

"The singular includes the plural; and the plural, the singular; * * * *."

We are of the opinion that the words "may call another election" are not unyielding but render themselves to reasonable construction and may be and can be construed to mean one or more, several, some, or an indefinite number.[4] We are admonished by our own statute, § 645.08, to so construe statutory words importing the singular number as to include the plural unless it be otherwise specifically provided or unless there be something in the subject or context repugnant to such construction.

■ The procedure followed in this case may not have been in exact conformity with the statutory requirements. Relators contend that the county school survey committee failed to comply with § 122.48, subd. 2, in that they did not act by way of amendment of the final report to correct the description of the school districts which was altered by the elimination of School District No. 86, and

[3]Garden City, Gulf & Northern R. Co. v. Board of Co. Commrs. 82 Kan. 795, 109 P. 684.

[4]Eastham v. Holt, 43 W. Va. 599, 27 S. E. 883, 31 S. E. 259; State ex rel. Crown Coach Co. v. Public Service Comm. 238 Mo. App. 287, 179 S. W. (2d) 123; People v. Ellsworth, 90 Mich. 442, 51 N. W. 531.

that they failed to hold public meetings at least 30 days prior to the election on the report in amended form, § 122.52(1), and failed to conform to § 122.52(3) which states that, when another election is called by the county superintendent with the approval of the county survey committee, the same recommendation or a revised recommendation, the latter approved by the state advisory commission, shall be submitted to the voters.

The material facts as stipulated and agreed upon between relators and respondents contain nothing relative to a survey committee calling meetings 30 days prior to the election of March 6, 1953.

The relators maintain that the statute requires a formal amendment or revision to be submitted to the voters if any change whatsoever is contemplated and that such amendment must be first approved by the state advisory commission, such approval being mandatory. Respondents admit that there was no amended report forthcoming and therefore no submission of one to the state advisory commission. They take the position generally that no amendment was necessary to show elimination of District No. 86 Joint, since it was not included in the petitions, the notice of elections, or the ballots on the order of reorganization and the survey committee had approved the call of a fourth election and that their report of November 1, 1948, was unchanged but for the one fact that School District No. 86 Joint was no longer subject to their recommendation.

Neither the survey committee nor the state advisory commission have any authority to establish legal rights. They have the power to study and consider reorganizations of school districts for purposes of recommending the adoption of a plan to be submitted to the voters, but neither has the power to create a school district. The survey committee has the power of approval upon the call of another election and the county superintendent then proceeds with the election call, § 122.52 (1, 2, 3), but no legal rights are or can be established until the legal voters in the area have adopted the plan of reorganization by a majority vote and the county superintendent has issued proper orders to give effect to the vote. §

122.52(4). Whatever legal rights are established are established by the legal voters in a free and open election. State ex rel. Huntley School Dist. v. Schweickhard, 232 Minn. 342, 45 N. W. (2d) 657.

We do not question that the requirements of the statute as to proceedings in elections are mandatory and that there must be substantial compliance, but we cannot here disregard another rule to the effect that an irregularity not apparently affecting the result will not be permitted to avoid a fair election. In re Special Election in School Dist. No. 68, 183 Minn. 542, 237 N. W. 412. We believe the correct rule is stated in 29 C. J. S., Elections, § 214:

"* * * Elections should never be held void unless they are clearly illegal; it is the duty of the court to sustain an election authorized by law if it has been so conducted as to give a free and fair expression of the popular will, and the actual result thereof is clearly ascertained."

Our own decisions are in line with the above pronouncement. Ferguson v. City of Morris, 197 Minn. 446, 267 N. W. 264; In re Special Election in School Dist. No. 68, *supra;* Clayton v. Prince, 129 Minn. 118, 151 N. W. 911; McEwen v. Prince, 125 Minn. 417, 147 N. W. 275; Backus v. City of Virginia, 123 Minn. 48, 142 N. W. 1042; Schweigert v. Abbott, 122 Minn. 383, 142 N. W. 723; Pennington v. Hare, 60 Minn. 146, 62 N. W. 116; Edson v. Child, 18 Minn. 43 (64); Taylor v. Taylor, 10 Minn. 81 (107). We hold that there was substantial compliance and no irregularities here sufficient to invalidate the election. A revision or amendment of the reorganization recommendations is not a jurisdictional requirement to an election, providing substantial compliance has been had generally with the statutory provisions. In re Order of Superintendent of Schools, Nobles County, 239 Minn. 233, 58 N. W. (2d) 465; State ex rel. Grozbach v. Common School Dist. No. 65, 237 Minn. 150, 54 N. W. (2d) 130.

We are of the opinion that deletion of School District No. 86 from the petitions used, the notices of elections, and the election ballot was not such a change or revision of the school survey report

as required formal revision and approval by the state advisory commission and that the approval of the county survey committee was sufficient under the existing circumstances. The reorganization of the School District No. 82 in Sibley county and the action of the county commissioners of McLeod county had disposed of that matter, and the situation did not present a problem different from or in conflict with the procedure followed by a board of appeal operating under the statute. After a decision by the board of appeal, the survey committee only makes changes necessary to incorporate the findings of the board of appeal in the proposal which is to be submitted to the voters. State ex rel. Huntley School Dist. v. Schweickhard, 232 Minn. 342, 45 N. W. (2d) 657. Where proceedings of this nature are under scrutiny, it cannot be overlooked that many of the formal steps and writings must be made by laymen who often have limited experience and knowledge as to statutory application. Peiper v. County Superintendent, 130 Minn. 54, 153 N. W. 112.

Furthermore, where official transactions have been completed, public officers in charge thereof have the benefit of the presumption, unless there is an affirmative showing to the contrary, that their duties performed in connection therewith were in the manner and form required by law, and he who alleges to the contrary must assume the burden of overcoming that presumption. In re Common School Dists. Lyon and Yellow Medicine Counties, 231 Minn. 40, 42 N. W. (2d) 393.

In the case before us the showing is clear that the county superintendent proceeded to call the election subject to the approval of the county school survey committee, a committee which had made its report beginning as early as the year 1948; that, subsequent to the report the other elections were held; and that the fourth election was held pursuant to that school survey committee's recommendations and its report for reorganization. Where there is substantial compliance with §§ 122.52 to 122.54 in regard to the procedural steps necessary to establish the new school district recommended by the survey committee and to elect its school board, unless there be other defects to be taken up, the election and reorgani-

zation are valid. State ex rel. Grozbach v. Common School Dist. No. 65, *supra*.

■ The relators contend that the offices of county supervisor of assessors and member of board of education of independent school district are incompatible and, therefore, that county supervisor of assessors, Wesley Abram, is ineligible to hold any office on the school board. The respondents maintain that there is nothing incompatible between these two positions and that, even if there were, Abram would be a legal member of the school board of Independent School District No. 88 because his election to the board would have vacated his office as county supervisor of assessors under the rule laid down in State ex rel. Hilton v. Sword, 157 Minn. 263, 196 N. W. 467.[5] Constitutionally there was nothing to stand in the way of Wesley Abram seeking election to the school board of Independent District No. 88. Only one thing remains: Is there common law incompatibility between the two offices and, if they are incompatible, does the election to the latter vacate the former?

Public offices are incompatible when their functions are inconsistent, their performance resulting in antagonism and a conflict of duty, so that the incumbent of one cannot discharge with fidelity and propriety the duties of both. State ex rel. Hilton v. Sword, *supra.*[6] An examination of the statutes providing for the appointment of a county supervisor of assessments would indicate that he acts only in a supervisory capacity; he may make recommendations at the call of the county commissioners, give advice as to valuations constituting no more than recommendations for them to either adopt or revise, and generally assist assessors throughout the county in keeping assessment materials and reports in order. Therefore, we have concluded after careful consideration of the matter that membership on a board of education of an independent school dis-

[5]See, Hoffman v. Downs, 145 Minn. 465, 177 N. W. 669; 42 Am. Jur., Public Officers, § 78; 67 C. J. S., Officers, § 23a.

[6]See, State ex rel. Young v. Hays, 105 Minn. 399, 117 N. W. 615; Kenney v. Goergen, 36 Minn. 190, 31 N. W. 210.

trict is not incompatible with the appointive office of county supervisor of assessments and that Wesley Abram is not ineligible for the office of school board member to which he has been elected; namely, for said reorganized District No. 88 of McLeod county.

We hold that the reorganization of School District No. 88 of McLeod county was proper and valid by and through substantial compliance with the reorganization and school election laws.

Writ discharged.

