STATE EX REL. SCHOOL DISTRICT NO. 56, TRAVERSE
COUNTY, AND OTHERS v. HOWARD SCHMIESING
AND OTHERS.
STATE EX REL. SCHOOL DISTRICT NO. 56, TRAVERSE
COUNTY, AND OTHERS v. CORA WERNER
AND OTHERS.[1]

August 6, 1954.

Nos. 36,328, 36,348.

---

[1]Reported in 66 N. W. (2d) 20.

*Johanson, Winter & Lundquist,* for appellants.
*Field, Arvesen & Donoho,* for respondents.

NELSON, JUSTICE.

This is a proceeding in quo warranto originally commenced in the district court for the county of Traverse with the consent of the attorney general to determine whether Independent Consolidated Joint School District No. 61 of Traverse county and No. 86 of Wilkin county is a lawfully constituted consolidated school district;

whether it has authority to function as a duly organized school district; and further whether the respondent individuals named are authorized to act as school board members of said district. The trial court made findings in favor of respondents, and relators moved in the alternative for amended findings or for a new trial. Relators appeal from an order denying this motion.

Relators in this proceeding raise the question whether Independent Consolidated Joint School District No. 61 of Traverse county and No. 86, Wilkin county, is a public corporation, legally organized and existing under the laws of this state. They raise no question as to the validity of the election of the members of the school board.

A school survey committee of nine members was created pursuant to M. S. A. 122.40 to 122.57 of the reorganization act. This committee was regularly elected. After compliance with all statutory requirements governing school reorganizations, an election was held January 8, 1952, at which the recommendations made in the report of the school survey committee were defeated. Thereafter the school survey committee revised its former final reorganization proposal and recommendations by deleting a district and parts of two others from the proposed plat and adding the remainder of district No. 10 in Wilkin county, a portion of which had been included in the final plan prior to this revision. The school survey committee later held a meeting in the added area on December 22, 1952, 30 days before any further election, as required by the act, §§ 122.47 and 122.52, since no previous meeting under § 122.52 had been held in this added area. Public meetings provided for under § 122.52 had been held in every school district included in the final report of the school survey committee, as originally filed, between the year 1948 and the January 8, 1952, election. We think this appears without dispute.

■ Relators contend that the changes made and recommended by the school survey committee required it to hold additional meetings or second hearings in every district or portion thereof included in the later revised final report. The statute makes no provision for any additional hearings either as originally enacted in 1947 or after

amendments of 1949, 1951, and 1953. Section 122.52, subd. 3, which provides for calling another election when reorganization has failed in a prior election, makes no reference to any additional hearings.

The revised final report was approved by the state advisory commission in due time before the last hearing required by the act held on December 22, 1952. Whatever additional public meetings were thereafter held in 1953 before the next election are unimportant since the only additional hearing required was held on the revised final report of the school survey committee on December 22, 1952. If the citizens and voters in the proposed district as revised chose to meet additionally for discussions, they were free to do so under the general right of public assembly, even though the school survey committee had on January 29, 1953, set the next election date for February 20, 1953.

In State ex rel. Klitzke v. Independent Consol. School Dist. No. 88, 240 Minn. 335, 346, 61 N. W. (2d) 410, 417, this court said:

"Neither the survey committee nor the state advisory commission have any authority to establish legal rights. They have the power to study and consider reorganizations of school districts for purposes of recommending the adoption of a plan to be submitted to the voters, but neither has the power to create a school district. The survey committee has the power of approval upon the call of another election and the county superintendent then proceeds with the election call, § 122.52(1,2,3), but no legal rights are or can be established until the legal voters in the area have adopted the plan of reorganization by a majority vote and the county superintendent has issued proper orders to give effect to the vote. § 122.52(4). Whatever legal rights are established are established by the legal voters in a free and open election. State ex rel. Huntley School Dist. v. Schweickhard, 232 Minn. 342, 45 N. W. (2d) 657."

■ Notice of the 1953 election was duly and properly posted by the county superintendent of schools pursuant to statute. The county superintendent determines the date with the approval of the survey committee. The call had the approval of the school survey committee based upon its report in its revised form. Although the

survey committee in issuing its approval indicated that the superintendent was directed to *publish* the election notice, this was not necessary in order to comply with the required statutory notice, since § 122.21, as incorporated in § 122.52, requires publication of notice only when a newspaper is published within the proposed consolidated district, and there was no newspaper published within the territory involved. Therefore the order for publication by the survey committee was immaterial to the validity of the election.

■ The school election of February 20, 1953, was held for the purpose of putting to a vote the reorganization into a new district of districts 14, 27, 36, 41, 44, 56, 60, 17 less section 15, 28 less sections 29 and 32 of Traverse county, and district No. 35 and district No. 10 less sections 9 and 10 of Wilkin county. At this election the proposal for reorganization carried, the vote in the rural areas being 94 in favor of reorganization and 70 opposed, and in the urban area, 82 in favor of reorganization and five opposed. No election was held in three of the rural districts due to a severe snowstorm, inclement weather, and highway conditions in these three districts. Thereafter and on March 2, 1953, the superintendent issued an order reorganizing the territory into one school district to be known as Independent Consolidated Joint School District No. 61 of Traverse county and No. 86, Wilkin county. On April 13, 1953, the individual respondents in this proceeding were duly elected members of the school board of the new school district and thereafter duly qualified.

Relators contend that the election of February 20, 1953, was invalid and void. When the Traverse county school survey committee was established at a meeting held on November 7, 1947, five rural and four urban members were elected as required by statute. The membership continued in this proportion only until the spring of 1952 when Fred Lichtsinn, an original rural member, moved his place of residence to the village of Wheaton, an urban district. Relators contend that the calling of the 1953 election was void because *at that time* the survey committee was not properly constituted. It must be pointed out, however, that until the spring of 1952 the committee consisted of five rural and four urban members

as provided by statute and that prior to this date the committee had completed its main duties. As of that time the original final report had been prepared and filed, all pursuant to statute, and one election had already been held. The only action taken after one of the original rural members moved into an urban area was the revision of the report by altering to the extent heretofore explained the area to be included in the reorganization, the holding of a hearing in the new area added by the revision, and the calling of the second election for February 20, 1953. As this court said in State ex rel. Klitzke v. Independent Consol. School Dist. No. 88, 240 Minn. 335, 347, 61 N. W. (2d) 410, 418:

"* * * A revision or amendment of the reorganization recommendations is not a jurisdictional requirement to an election, providing substantial compliance has been had generally with the statutory provisions. In re Order of Superintendent of Schools, Nobles County, 239 Minn. 233, 58 N. W. (2d) 465; State ex rel. Grozbach v. Common School Dist. No. 65, 237 Minn. 150, 54 N. W. (2d) 130."

In that case this court held that, although one member of a county survey committee was disqualified by statute, the work of the committee was not invalid since no important work was done by the committee during the time the disqualified member remained on the committee. Here, the report was revised and another election called after the balance between urban and rural members had been upset, but since this court has held that a revision or amendment does not in and of itself constitute a jurisdictional requirement to an election (State ex rel. Klitzke v. Independent Consol. School Dist. No. 88, *supra*), there is no ground for any contention that all action taken by the committee subsequent to the spring of 1952 was invalid. An election will not be struck down as invalid if there is substantial compliance with all the procedural steps required by statute. State ex rel. Klitzke v. Independent Consol. School Dist. No. 88, *supra;* State ex rel. Grozbach v. Common School Dist. No. 65, 237 Minn. 150, 54 N. W. (2d) 130.

■ Relators also contend that the following irregularities are sufficient to render the election invalid, viz.: Holding the election in unlawful polling places; irregularities in the appointment of election officials; and violating the statute or the notice of election as to the hours the polls were to be kept open.

Section 122.52, subd. 2, provides:

"* * * Wherever possible the election shall be held in the school building of the school districts included in the proposal."

The wording of the statute indicates that an element of discretion in designating the voting place was given to the school survey committee and the county superintendent. There is nothing in the evidence to indicate an abuse of discretion in the choice of the polling places. The evidence discloses that one schoolhouse had been closed for several years and that in prior years homes had been designated and used as polling places. It is well established that an irregularity of this nature, should it be considered such, will not render an election invalid when the change is made in good faith and no one is misled. See, 18 Am. Jur., Elections, § 114. In the absence of convincing evidence to the contrary, which is lacking here, the presumption of regularity of official acts applies. In re Common School Dists. Lyon and Yellow Medicine Counties, 231 Minn. 40, 42 N. W. (2d) 393.

■ In the absence of two other appointed judges, the clerk of the school board in district No. 27 appointed two other persons to act as judges in their stead, and the three then kept the polls open for the required period. Six votes were cast in district No. 27, and these were received, tabulated, and returned, which were the votes of all persons who voted in that district.

Relators contend that the mere absence of the officers appointed in the notice of election is an irregularity sufficient to invalidate the election. Nothing appears in the evidence to even remotely indicate that the conduct of those who became the final judges of the election was not fair and honest.

It has been held by this court that, if the election board was completed by the selection of others under color of authority, who

might be officers *de facto,* the election is then valid. See, Hankey v. Bowman, 82 Minn. 328, 84 N. W. 1002. The important question is whether the election has been honestly and fairly conducted, and if it has, the failure to have present at the election the full number of election officers required by law, either permanently or by reason of temporary absence, is not fatal to the validity of an election. The policy followed in this state has been clearly stated in the recent case of In re Order of Sammons, County Superintendent of Schools, Cottonwood County, 242 Minn. 345, 349, 65 N. W. (2d) 198, 202, where Mr. Justice Matson, speaking for the court said:

"It is the general rule that, *before an election is held,* statutory provisions regulating the conduct of the election will usually be treated as mandatory and their observance may be insisted upon and enforced. *After an election has been held,* the statutory regulations are generally construed as directory and such rule of construction is in accord with the policy of this state, which from its beginning has been that, in the absence of fraud or bad faith or constitutional violation, an election which has resulted in a fair and free expression of the will of the legal voters upon the merits will not be invalidated because of a departure from the statutory regulations governing the conduct of the election except in those cases where the legislature has clearly and unequivocally expressed an intent that a specific statutory provision is an essential jurisdictional prerequisite and that a departure therefrom shall have the drastic consequence of invalidity."

See, 18 Am. Jur., Elections, § 206; Annotation, 1 A. L. R. 1535.

Section 122.52, subd. 2, provides that the judges appointed for each polling place shall be school board members *if they are available.* There is no evidence here on the question of availability. In its absence, again, the presumption must be that the school survey committee and the county superintendent, in an exercise of the discretion given them on availability, made their selection of judges pursuant to statutory requirements. In re Common School Dists. Lyon and Yellow Medicine Counties, *supra.*

■ Section 122.52, subd. 2, provides:

"* * * The polls shall be open for at least two hours, and may be open for a longer period, not to exceed 12 hours, if so designated in the posted and published notices."

The notice of election, in this case, required the polls to be open from 4 p. m. to 7 p. m. on February 20, 1953, a period of three hours. The notice complied with the requirement of the statute. The only instances where this requirement was not fulfilled was in those districts where no election was held at all, as hereafter discussed.

The evidence is clear that weather conditions and a severe snowstorm made travel difficult throughout the territory where the election was scheduled and in some parts, according to the testimony, apparently impossible. As a result no election was actually held in districts 28, 44, and 56. None came to the polling place to vote in district No. 28. As to district No. 44, there was testimony by a voter to the effect that his failure to vote was due entirely to the storm, and the clerk of the district testified that the polls in that district were not open because of the storm and that no one, to his knowledge, came to vote and was unable to do so. The clerk of district No. 56 testified that her husband and two other men were the only persons who appeared at the polling place which in that instance was open from 4:15 p. m. to 5:45 p. m. There is no testimony that any person appeared prior to opening or after closing for the purpose of voting. These four persons who appeared did not vote, but this was a matter of their own choice based upon the belief that their ballots could not be counted without all of the regularly appointed election judges being present.

It appears from the evidence that six voters who came to the polls did not cast their ballots. However, the canvassed result in the election, disclosed by the return of February 27, 1953, showed:

Total for reorganization .............................. 176
Total against reorganization ......................... 75

Ten rural school districts were involved in the reorganization plan and recommendations. Seven of these made a return of votes

cast at the election. Wherever such votes were cast, counted, and returned no question has been raised that the polls were not open the time required by law. In the other three districts where the polls were not open, it clearly appears from the evidence that the only cause was the stormy weather accompanied by snow and the blocking of highways, a condition over which neither the school survey committee, the superintendent, the election judges, or the voters had any control. The severity appears to have been such that, had the three other polling places been open the full time, only six additional votes would have been cast. It is apparent from the record that the result of the election would not have been changed had every voter who was known to have come to the polls been able to cast his vote.

Relators cite numerous cases dealing with situations where election officials failed to perform their duties and the courts held that no valid election had in fact been held. None involved the uncontrollable force of the elements or adverse weather conditions of the nature encountered here. Relators have cited no case where an election has been invalidated under similar conditions and circumstances. It is also true that the respondents have cited no case where an election has been sustained under similar conditions and circumstances. The question presented appears to be one of first impression in this state.

No fraud or illegal practice on the part of election officials has been shown. The failure to open certain polling places as regularly scheduled was due to a severe snowstorm which the evidence quite convincingly establishes was the sole cause. Since the evidence is sufficiently clear that no change in the election would have resulted if all the polling places had been kept open, we conclude that the relators have failed to establish their contention that the election was invalid or to effectively challenge the facts as found by the trial court below, whose findings have the same effect and the same binding force as the verdict of a jury. The trial court found that the school election of February 20, 1953, was not invalid because of

the fact that no voters appeared at certain polling places due to a severe snowstorm and blocked roads.

The relators argue that the election could have been called by those charged with that duty under the statute at some other time of the year and thereby severe weather and the possibility of a snowstorm and blocked roads could have been avoided. But, as the trial court stated in its memorandum, "the statute places no restriction of any kind upon the Survey Committee as to the season during which the election should be held."

We are not aware that any such controls are permitted or restrictions exist where free elections are the order of the day. It is the prerogative of the survey committee and the superintendent to exercise their judgment and discretion in that regard, and the courts have no right to interfere with the exercise of that duty to the extent of passing upon their wisdom or lack of it in selecting a certain day in the future for voting. If the statute is otherwise complied with as to election requirements, if good faith has been exercised by the election officials so that thereby no one has been misled, and if the officials have not under the law failed to perform their statutory duties, then the date set will have to stand. State and national elections have fixed dates. No change therein can be made even after consulting the weatherman. Elections must of necessity be held in all kinds of weather. If an election is held in fact, it is valid, though there may have been interference as there was here by the elements. The vote may be reduced thereby or the outcome changed, but qualified voters who fail to go to the polls to vote under the circumstances will be bound by the expressed will of those who do. Of course, natural conditions over which man may exercise control may prevent an election in fact, but we think that interference short of that may not be classed as jurisdictional.

This must of necessity be the rule, or there would be no solid ground upon which candidate or voter could stand, for endless confusion and uncertainty would otherwise result. The trial court assigned like reasoning for the inability of either side to produce a case in point.

■ Relators contend that they were denied the statutory right of appeal. After quoting § 122.48 to the effect that it provides that an appeal may be taken to the state commission within 60 days after the passage of the act or the filing of the final report or any revision or amendment to the final report, they say that there is no question under the state of the record that the petitions of the relator school districts and others were on file on May 1, 1952, which was within 60 days after the filing of the final report as revised. Relators contend that they have been deprived of their right to a hearing on the petitions in contradiction of § 122.48. They argue that the testimony is undisputed that neither the survey committee nor the state advisory board or commission has acted properly on the petitions before it.

The reorganization act as originally adopted in L. 1947, c. 421, contains no appeal procedures of any kind. The legislature by adopting L. 1949, c. 666, § 6, amended the 1947 law by inserting as subd. 3 of § 122.48 a provision for appeal to the state commission by the school board of any district where the people feel aggrieved by the proposed divisions or assignments to districts in some way, but with the following qualification:

"* * * Such appeal must be made within 60 days after the passage of this act or filing of the final report or any revision or amendment to the final report."

The record is clear that the final recommendation of the school survey committee for this reorganization was filed on November 1, 1948. As of that date there was no appeal procedure. The 1949 amendment providing for appeal did not become effective until April 25, 1949. To have effectively appealed the recommendation of November 1, 1948, relators would have had to file petitions within 60 days after April 25, 1949, when the appeal provisions took effect. But the petitions to which relators refer were not filed until June 1, 1951. Subsequent to this, the 1952 elections were held. No further petitions were filed between the 1952 and 1953 elections. Since these petitions of June 1, 1951, were not effectively filed so as to justify any appeal from the final report, it cannot be claimed that those

same petitions can be ruled effective to justify appeal of the revised report filed April 1, 1952. Under the circumstances disclosed by the evidence, we hold as did the court below that no right of appeal was denied to anyone.

Relators have assigned as error certain rulings by the trial court on offers of proof in connection with the 1952 election proceedings and tabulations and the assessed valuation of the area subject to reorganization recommendations. The trial court sustained objections to offers, one on the ground of immateriality and the other on the ground that the offer to prove assessed valuation was not sustained by competent evidence. We perceive no abuse of discretion in the rulings as made by the court upon the state of the record. There was no error.

The issues of this case were raised in a certiorari proceeding brought prior to the election of the school board members of the reorganized district and the bringing of this quo warranto proceeding. Now, the question has been raised whether certiorari was a proper remedy under the circumstances. The parties themselves recognize that all the issues raised in the certiorari proceeding were the same as those raised in the quo warranto proceeding. Motions were made in the lower court to dismiss both the certiorari and the quo warranto proceedings. The certiorari proceeding appearing to have been abandoned, the court entered its order discharging the writ, all issues involving the merits raised by the certiorari proceeding having become moot because of the decision in the quo warranto proceeding. Accordingly, we do not feel it necessary to rule on the question whether certiorari is a proper proceeding for raising the issues resolved in this case, and we sustain the order of the court below discharging the writ in the certiorari proceeding brought herein.

The court below found that all proceedings leading up to the reorganization election of February 20, 1953, were regular, legal, and valid, and conferred jurisdiction upon the officials thereof to conduct and hold the same; and that the said election was held and the result declared; that there was no fraud in the conduct

of the election; that solely by reason of adverse weather and highway conditions no votes were cast in the three rural districts numbered 28, 44, and 56; and that no appeal was taken from the final report or the revised or amended final report of the school survey committee, as provided by law.

The court further concluded as a matter of law that Independent Consolidated Joint School District No. 61 of Traverse county, Minnesota, and No. 86 of Wilkin county, Minnesota, is a duly and legally organized and existing public corporation under the laws of this state; that the named respondents designated as the first elected school officers of the newly constituted school district are the duly elected, qualified, and acting members of its school board; and that the writ in the nature of quo warranto be discharged with costs and disbursements to the prevailing parties and that judgment be entered accordingly. We concur in that result.

Affirmed.

