## MAYNARD HAHN v. ROGER GRAHAM.

225 N. W. 2d 385.

January 3, 1975—Nos. 45566, 45558.

*Somsen, Dempsey & Schade, Terence M. Dempsey,* and *William M. Schade,* for appellant.

*Rufer, Hefte, Pemberton, Schulze & Sorlie* and *Gerald S. Rufer,* for respondent.

PER CURIAM.

Appeal from a judgment of Sibley County District Court dismissing the election contest of Maynard Hahn, contestant, and

directing the county auditor to issue to Roger Graham, contestee, a certificate of election to the office of sheriff of Sibley County. The parties were candidates for that office in the November 5, 1974, general election. The canvass showed that contestee received a total of 3,214 votes and contestant a total of 3,188 votes. At issue in this contest are 202 votes which were cast in Jessenland township: 148 for contestee, 42 for contestant, and 12 disputed. Contestant seeks to nullify the election in that township.

In order to implement L. 1973, c. 676, known as the "permanent registration system," the Sibley County auditor appointed township clerks as deputy registrars for registration of voters at the November 1974 general election. Dennis Graham, township clerk of Jessenland township and brother of contestee, was so appointed to act as voter registration deputy in that township. Although his relationship to the contestee was known to the auditor, and apparently to most of the voters, there is no allegation, indeed no claim, that he at any time tampered with ballots or in any way acted to influence persons voting in the township. While the oath he took was that of an election judge, he avoided ballot contact and, except for one instance during the counting of ballots and at the request of an election judge he recounted a stack of ballots to verify the count, he confined his activities to registering voters.

Contestant's challenge is based upon the single fact of Dennis Graham's disqualification from acting as an election judge by Minn. St. 203.22, subd. 2, which provides:

"No judge may bear the relationship of husband, wife, parent, child, brother, or sister to any other judge in the same precinct, a candidate, or any member of the council of the municipality in which he is a judge or of the county board if he is a judge in an unorganized territory."

The trial court found that the violation of the election law was "trivial, unimportant and in no manner affected the result of this election." Nevertheless, contestant urges this court to hold

that the irregularity was fatal to the election on the theory that Graham's position as an election judge provided him with an "opportunity to influence" the outcome of the election. We decline to so hold and affirm.

There is ample evidence in the record to support the trial court's finding that the irregularity did not affect the outcome of the election. That finding is determinative. It has been the rule in this state for well over 100 years that violation of a statute regulating the conduct of an election is not fatal to the election in the absence of proof that the irregularity affected the outcome or was the product of fraud or bad faith. Taylor v. Taylor, 10 Minn. 81 (107) (1865). That rule and its rationale were fully stated in In re Order of Sammons, County Superintendent of Schools, 242 Minn. 345, 350, 65 N. W. 2d 198, 202 (1954), where we said:

"* * * *After an election has been held,* the statutory regulations are generally construed as directory and such rule of construction is in accord with the policy of this state, which from its beginning has been that, in the absence of fraud or bad faith or constitutional violation, an election which has resulted in a fair and free expression of the will of the legal voters upon the merits will not be invalidated because of a departure from the statutory regulations governing the conduct of the election except in those cases where the legislature has clearly and unequivocally expressed an intent that a specific statutory provision is an essential jurisdictional prerequisite and that a departure therefrom shall have the drastic consequence of invalidity."

We have consistently adhered to that rule in cases involving improper appointment or conduct of election judges although the "opportunity to influence" has been present. See, Green v. Independent Consolidated School Dist. No. 1, 252 Minn. 36, 89 N. W. 2d 12 (1958); State ex rel. School Dist. No. 56 v. Schmiesing, 243 Minn. 11, 66 N. W. 2d 20 (1954); Hagen v. Consolidated School Dist. No. 111-74, 156 Minn. 268, 194 N. W. 756 (1923);

State ex rel. Murphy v. Bernier, 98 Minn. 1, 38 N. W. 368 (1888); Janeway v. City of Duluth, 65 Minn. 292, 68 N. W. 24 (1896); State ex rel. Braley v. Gay, 59 Minn. 6, 60 N. W. 676 (1894); Soper v. County of Sibley, 46 Minn. 274, 48 N. W. 1112 (1891); Quinn v. Markoe, 37 Minn. 439, 35 N. W. 263 (1887); O'Gorman v. Richter, 31 Minn. 25, 16 N. W. 416 (1883); Taylor v. Taylor, 10 Minn. 81 (107) (1865). While we see no reason to deviate from the application of the rule to this case, we are not to be understood as condoning violations of clear statutory provisions governing the conduct of elections, such as § 203.22, subd. 2, and which are designed to ensure the integrity of the process.

In re Contest of Election of Vetsch, 245 Minn. 229, 71 N. W. 2d 652 (1955), cited by contestant, does not compel a contrary result. The irregularities there were so numerous and substantial as to cast doubt upon the integrity of the vote and as to constitute bad faith on the part of the election officials. See, Green v. Independent Consolidated School Dist. No. 1, 252 Minn. 36, 89 N. W. 2d 12 (1958). That is not the case here.

Affirmed and writ discharged.

MR. JUSTICE KELLY took no part in the consideration or decision of this case.